202 So.2d 232 (1967)
STATE of Florida ex rel. Cecil F. LOWE, Relator,
v.
Warren A. NELSON, As Judge of the Criminal Court of Record, Duval County, Florida, Respondent.
No. J-241.
District Court of Appeal of Florida, First District.
September 15, 1967.
Walter G. Arnold, Jacksonville, for relator.
Earl Faircloth, Atty. Gen., David U. Tumin, Asst. Atty. Gen., for respondent.
SPECTOR, Judge.
The relator has filed a suggestion for the issuance of a rule nisi in prohibition against the respondent to prohibit the latter from further prosecution of the relator on a charge of grand larceny.
*233 As grounds for his suggestion, the relator contends that he has become immunized from prosecution on that charge by operation of the State's immunity statute, Section 932.29, Florida Statutes, F.S.A., by reason of having been required under subpoena to testify before the Grand Jury, Spring Term, 1966, of Duval County, Florida, concerning the grand larceny charge now faced by him in the Criminal Court of Record of Duval County. Although a written waiver of the immunities afforded by Section 932.29 was executed by the relator, it is his contention that said waiver is a nullity because it was executed without benefit of the warnings prescribed by the United States Supreme Court in Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, decided June 13, 1966.
The facts underlying the instant proceeding are briefly the following. Mr. Cecil Lowe, the relator, at the time of the incident complained of was a member of the City Council of Jacksonville, Florida, an office to which he had initially been elected almost twenty years earlier and held continuously since. On July 13, 1966, one month after Miranda, a witness subpoena was served on Mr. Lowe commanding him to appear before the Grand Jury as a witness on the following day.
The transcript of the proceedings before the Grand Jury reveals that Mr. Lowe was advised that the Grand Jury "* * * is engaged in an investigation relating to larcenies of money from the City of Jacksonville, Florida, concerning purchases of various merchandise from the Harry Finkelstein Company of Jacksonville, Florida." He was further advised that "* * * this investigation is brought within the terms and provisions of our immunity statute.
"Under the laws of the State of Florida, when a person is called before the Grand Jury in connection with certain enumerated offenses, the law provides a person as called to testify cannot refuse to testify on the grounds his testimony might incriminate him. * * * The law gives complete immunity to such person from any prosecution. * * * Do you understand?
"Yes, sir, I think I do.
"* * * are you willing to waive your immunity?"
At this point in the proceedings, the State Attorney advised Mr. Lowe that the Grand Jury would not be interested in granting him complete immunity. It seems to us that this statement was enough to put the witness on notice that if he did not sign the waiver of immunity, he would not be interrogated by the Grand Jury.
The written waiver of immunity which was thereupon executed by the relator sets forth that under the laws of this State a person may not be prosecuted for offenses questioned upon by the Grand Jury unless such immunity is waived and said instrument concludes with language which imports on its face that it was given voluntarily.
The full thrust of relator's suggestion is that the waiver of immunity made by him both in writing and orally before the Grand Jury is constitutionally tainted, and thus a nullity, for the reason that the Miranda warnings were not given to the witness prior to the waiver. This contention is advanced by the relator even though the record fails to reveal any factual coercion leading to the execution of the waiver.
Accordingly, this Court is faced with the need to determine whether the principles enunciated by the United States Supreme Court in Miranda are applicable to proceedings before a state grand jury; and, secondly, if they are not so applicable, whether this Court will extend Miranda to such a proceeding.
In its opinion deciding Miranda and the three companion cases, the Supreme Court summed up its holding at 384 U.S. 444, 86 S.Ct. 1612, 16 L.Ed.2d 706, in the following language:
"* * * the prosecution may not use statements whether exculpatory or inculpatory, *234 stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination. By custodial interrogation we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way. * * * Prior to any questioning, the person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed. * * *"
The record before us indicates that no statements were made to the relator to the effect that he had a right to counsel, retained or appointed, before he executed the waiver and responded to questions put to him by the Grand Jury. If Miranda is applicable here, then that single omission would be sufficient to make out the relator's case. An examination of Miranda and its companion cases shows that in each of the four cases the defendants made either written or oral confessions during the course of interrogation by police. In each case, the interrogation and confession occurred while the accused was in the physical custody of the police. Miranda was interrogated while held in custody in the Phoenix police station and confessed. Vignera was interrogated while held in two separate detective squad headquarters in New York and confessed. Westover was interrogated by both the local police and F.B.I. while held in the Kansas City police station and confessed. Stewart was interrogated while held in custody at the Los Angeles police station and confessed. In each of the cases, the confession was admitted against the defendants. In each instance, the defendant had been subjected to custodial interrogation while in the custody of the police. In the instant case, the interrogation complained of did not occur while Mr. Lowe was in the custody of the police nor in the private office of a prosecuting official. On the contrary, the interrogation occurred before a Grand Jury composed of the relator's fellow citizens as prescribed by statute. A court reporter was present and the Grand Jury was operating under the direct supervision of the Circuit Court.
The Court in Miranda at 384 U.S. 477, 86 S.Ct. 1629, 16 L.Ed.2d 725, stated:
"The principles announced today deal with the protection which must be given to the privilege against self-incrimination when the individual is first subjected to police interrogation while in custody at the station or otherwise deprived of his freedom of action in any significant way." (Emphasis supplied.)
Earlier in 384 U.S. 461, 86 S.Ct. 1620 and 16 L.Ed.2d 716, we find the following:
"We are satisfied that all the principles embodied in the privilege apply to informal compulsion exerted by law-enforcement officers during in-custody questioning. An individual swept from familiar surroundings into police custody, surrounded by antagonistic forces, and subjected to the techniques of persuasion described above cannot be otherwise than under compulsion to speak. As a practical matter, the compulsion to speak in the isolated setting of the police station may well be greater than in courts or other official investigations, where there are often impartial observers to guard against intimidation or trickery." (Emphasis supplied.)
It is our opinion that the above language taken from Miranda serves to distinguish police custodial interrogation from interrogation by the grand jury even though the presence of the witness before the grand jury is compelled. From what we gather, Miranda is applicable to interrogations in the "isolated setting of the police station" and not those occurring "in courts or other official investigations" where there are impartial observers to guard against intimidation and trickery *235 being employed to compel the witness to give evidence against himself. It is our view that grand jury proceedings are not such lend themselves to the coercive police tactics, isolated though they may be, which prompted the Supreme Court to wield its broad Miranda brush to affect questionable cures even where no ills were present.
In the case at bar, there is no contention by the relator that his waiver was in any way coerced, either physically or psychologically, by the grand jury or its agents nor could such contention be made for the record of the proceedings refutes such an argument even before it is made.
Relator cites Garrity v. State of New Jersey, 385 U.S. 493, 87 S.Ct. 616, 17 L.Ed.2d 562, in support of the proposition that a waiver given by a witness appearing before the grand jury was invalid, but that case is not persuasive here for in Garrity, it was held that the threatened loss of the witness's office should he not testify amounted to a coercion of the witness's testimony. In the instant case, no such threat was held over the relator's head. Relator also relied on the application of Miranda by the Courts in People v. Arnold, Cal., 58 Cal. Rptr. 115, 426 P.2d 515 (1967); People v. Reason, 52 Misc.2d 425, 276 N.Y.S.2d 196 (N.Y. Dec. 1966); Commonwealth v. Jefferson, 423 Pa. 541, 226 A.2d 765 (1967); and People v. Kelley, Cal., 57 Cal. Rptr. 363, 424 P.2d 947 (1967). Each of these cases were post Miranda decisions in which the Court held that Miranda warnings were necessary prior to interrogation, but in each of these cases the custody in which the suspect was held was of a type during which unwitnessed or coercive pressures could be used upon the suspect rather than the type recognized by the Supreme Court in Miranda at 384 U.S. 461, 86 S.Ct. 1621, "* * * where there are often impartial observers to guard against intimidation or trickery."
In a decision which straddled Miranda in point of time, our own Supreme Court in Gordon v. Gerstein, 189 So.2d 873, affirmed a decision of the Third District Court of Appeal, reported at 183 So.2d 285, holding that a witness summonsed to give testimony before a prosecuting official was not entitled to have counsel present. The Supreme Court's opinion in Gordon was filed May 25, 1966, some twenty days before Miranda, but denied rehearing in an opinion dated September 21, 1966, sometime after Miranda. In State v. Stallings, 154 Conn. 272, 224 A.2d 718 (Nov. 1966), in a post Miranda decision, the Supreme Court of that state held that under the practice of that state proceedings before the grand jury are not such a critical stage in the administration of criminal justice so as to require that a witness's counsel be present with him while he appears before the grand jury. In United States v. DiMichele, 375 F.2d 959 (3d Cir.1967), the Federal Court in a post Miranda decision rejected the contention that a witness before the Federal Grand Jury was entitled to a warning of his rights to counsel.
The Courts of Florida have not yet held that Miranda is applicable to a witness appearing before the grand jury. We are not inclined to make that extension for the simple reason that the real or imagined reasons underlying Miranda do not exist in our grand jury proceedings. A court reporter and a broad representative group of community citizens are present to serve as impartial observers to guard against intimidation or trickery. Should safeguards not be present, our view of the nonapplicability of Miranda might differ.
The suggestion for issuance of a rule nisi is therefore denied.
WIGGINTON, C.J., concurs.
JOHNSON, J., dissents.
JOHNSON, Judge, dissenting.
I cannot agree with the conclusions reached in the majority opinion in this case for the reasons hereinafter enumerated.
*236 In order to properly premise my opinion, I need to restate some of the more pertinent facts as they actually existed. I think this is necessary to demonstrate that the latest United States Supreme Court decisions on the question involved are applicable and determinative of a view contrary to that announced in the majority opinion in this case.
The defendant was a city councilman and had been for years. The Grand Jury of Duval County had been engaged in investigation of certain rumored, at least, business irregularities by the City officials. He was subpoenaed to appear before the Grand Jury at a certain hour of a certain day and to testify. This subpoena carries with it the power of compulsion  the power to compel the witness to appear and to testify. He has no alternative. It is true that in order to not render the statute requiring the witness to testify unconstitutional, under the constitutional provisions against self-incrimination, the statute provides that when a person does so testify, he shall not be subject to prosecution for or on account of any transaction, matter or thing concerning which he so testified, and no testimony or evidence so given or produced, shall be received against him upon any criminal proceeding.
It appears from the transcript of the proceedings before the Grand Jury, that the State Attorney, told the defendant, after he had been brought into the Grand Jury Room (which excluded all persons except the jurors and State Attorney and his assistants) that the investigation was about certain larcenies against the City of Jacksonville, with particular reference to certain purchases from Harry Finkelstein Co., also, that the investigation is into matters brought within the terms and provisions of our immunity statute. He, the State Attorney, also pointed out that when a person is called before the Grand Jury to testify in connection with certain enumerated offenses, the law provides that since he can't refuse to testify on the grounds his testimony might incriminate him, the law gives complete immunity. He then asked the defendant if he understood. The defendant's answer left some doubt, when he said: "Yes, sir, I think I do." The State Attorney then handed the defendant a rather long typewritten paper and explained that said paper was a waiver of immunity and was "about what he had just explained to him" or similar words, and told him he wanted him to sign it. He also told him he could read it if he wanted to. The record does not disclose whether the defendant read it or not. He further stated that this Grand Jury "does not want to give you a complete immunity."
To me, the necessity for the waiver of immunity and statement that the Grand Jury did not want to give the defendant complete immunity, and the further fact the Assistant State Attorney while interrogating the defendant, reminded him of perjury, and also pointed out that the State had purchase orders from Finkelstein for the television and certain other articles, all point to the one fact that this defendant, at the time the subpoena was issued and at the time he first appeared in the Grand Jury, was more than just a witness. He was a defendant  a definite suspect. This was no longer an investigation into an unsolved crime. This had focused upon a definite suspect, as pointed out in Escobedo v. State of Illinois.[1] Therefore, the constitutional provision against self-incrimination is applicable. Regardless of whether the answers to interrogatories were exculpatory or inculpatory, the prosecution could not use statements stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination.[2]
*237 This then brings to bear three questions:
(1) Was the interrogation by the State Attorney and Grand Jury in "custody" interrogation, so that Miranda[3] is applicable?
(2) Were the requisite constitutional rights of the defendant pointed out to him so that he could intelligently waive immunity?
(3) Was the waiver of immunity valid?
The State contends, and the majority of this panel of the Court agree, that the inquisition by the Grand Jury was not a "custodial interrogation" and therefore the United States Supreme Court case of Miranda does not apply. The contention is that in Miranda and the other three cases combined for consideration in the one opinion as found in 384 U.S. 444, 86 S.Ct. 1602, 16 L.Ed.2d 706, the defendants had been arrested and interrogated in police stations. This is true, but, before getting to specifics of the four cases included in the Miranda case, Chief Justice Warren specifically pointed out that the Court (the U.S.S.Ct.) should clear up the uncertainties left suspended in previous decisions including Escobedo, with reference to the defendant's rights under the Fifth, Sixth and Fourteenth Amendments to the United States Constitution.
We find the following language used in Miranda v. State of Arizonia in 384 U.S. 467, and 86 S.Ct. at page 1624:
"Today, then, there can be no doubt that the Fifth Amendment privilege is available outside of Criminal Court proceedings and serves to protect persons in all settings in which their freedom of action is curtailed from being compelled to incriminate themselves." (Emphasis supplied.)
Also in Miranda v. State of Arizona in 384 U.S. at page 444 and 86 S.Ct. at page 1612, the court defined "custodial interrogation" as follows:
"By custodial interrogation, we mean questioning initiated by law enforcement officials after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." (Emphasis supplied.)
From this we can definitely see that the Court was not limiting the rule laid down, as pointed out in Miranda, Escobedo, Massiah[4] and other cases, with reference to the rights of the defendant to just those cases when an arrest had been made by an officer. The Grand Jury is a law enforcement body who investigates, inter alia, alleged violations of criminal law in a secret proceeding. When a potential defendant, and it cannot be disputed that all the record before us definitely shows that the State Attorney and the Grand Jury considered the defendant as a defendant, appears before a Grand Jury and is subjected to a barrage of questions from Assistant State Attorneys, State Attorney, and Grand Jurors, alike, he is likely to become confused, nervous, and unable to think clearly. He needs the help of counsel at a time like this.
Since the Miranda case came down, the Supreme Court of Utah in the case of State of Utah v. Ruggeri, supra, dealt with the question of custodial interrogation as used in Miranda and said this at page 973 of 429 P.2d: "When Brady entered the grand jury room pursuant to a subpoena, he was in custody. He could not leave until he was excused." This is almost an exact statement as contained in the Florida Statutes on this subject.
So it seems very clear to me that when the defendant, in response to the Grand Jury subpoena, entered the Grand Jury Room, he was from that time on "deprived of his freedom of action in a significant *238 way."[5] He could not leave until released. He could not refuse to testify without being in contempt. His only right of protection was his immunity from prosecution for the things he testified about. We therefore come to the other two questions enumerated above, namely: Were the requisite procedural safeguards set out in Miranda as necessary demonstrated and if not, did the waiver of immunity become invalid by reason of a lack thereof. I answer the first of the two latter questions in the negative and the last of the questions in the affirmative.
Having determined in my mind that the defendant was in a criminal proceeding and in custody when he appeared before the Grand Jury, and was a potential defendant, any testimony he gave was in violation of his constitutional privilege, regardless of whether he claims or asserts his privilege or not.[6]
Inasmuch, therefore, as the defendant had no alternative about testifying before the Grand Jury, the question of his waiver of immunity became a decisive stage in the proceeding.
In Escobedo, the United States Supreme Court said a party is entitled to the benefit of counsel at the beginning of a decisive stage of the proceeding and determined that "the decisive stage is reached when the investigation has begun to focus on a particular suspect."
There being no question but that the State Attorney and apparently the Grand Jurors, had narrowed their proceeding to further establishing a guilt in the defendant and his codefendant, George Robinson, with regard to the purchases of merchandise from Finkelstein's, the question of waiver of immunity became of greater significance to the rights of the defendant than the actual interrogation. This was a decisive stage. If the defendant refused to sign the waiver, he could not be interrogated about any matter which would be the subject of a later criminal prosecution against him. The record discloses that no warning was given to the defendant prior to the request for his signature to the waiver. He was not advised as to what his constitutional rights were or that he was entitled to counsel at this stage. We do not have to go into the question of whether he would have had a right to counsel during the interrogation  this is not a matter before us  the point is, he should have had advice of counsel as to the meaning of his waiver and its ultimate dire effects upon him in a subsequent criminal trial.
In Miranda v. State of Arizona, supra, at page 1640 of 86 S.Ct., at page 737 of 16 L.Ed.2d, the Supreme Court said:
"In dealing with custodial interrogation, we will not presume that a defendant has been effectively apprised of his rights and that his privilege against self-incrimination has been adequately safeguarded on a record that does not show that any warnings have been given or that any effective alternative has been employed. Nor can a knowing and intelligent waiver of these rights be assumed on a silent record."
The question has been raised that the defendant was intelligent and experienced and that the rule applied to persons who were ignorant of their rights. The court said in Miranda, supra, "The privilege against self-incrimination secured by the Federal Constitution applies to all individuals, the indigent as well as the affluent."
In Miranda v. State of Arizona, supra, it is said:
"The absolute requirement of informing a person held for interrogation by a law enforcement officer of his right to consult with a lawyer and to have the lawyer with him during interrogation cannot be met by any amount of circumstantial evidence that he may have been aware of this right."
*239 We further find that the court said in Miranda that the Fifth Amendment privilege is fundamental to our system of constitutional rule and the expedient of giving an adequate warning. Assessments of the knowledge the defendant possessed, based on information as to his age, education, intelligence or prior contact with authorities, can never be more than speculation; a warning is a clear-cut fact. "More important, whatever the background of the person interrogated, a warning at the time of the interrogation is indispensable to overcome its pressures and to insure that the individual knows he is free to exercise the privilege at that point in time."
"Therefore, the right to have counsel present at the interrogation is indispensable to the protection of the Fifth Amendment privilege * * *."
And in summary, the Court said (page 1630, 86 S.Ct., page 726, 16 L.Ed.2d):
"To summarize, we hold that when an individual is taken into custody or otherwise deprived of his freedom by the authorities in any significant way and is subjected to questioning, the privilege against self-incrimination is jeopardized. Procedural safeguards must be employed to protect the privilege; and unless other fully effective means are adopted to notify the person of his right of silence and to assure that the exercise of the right will be scrupulously honored, the following measures are required. He must be warned prior to any questioning that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires. Opportunity to exercise these rights must be afforded to him throughout the interrogation. After such warnings have been given, and such opportunity afforded him, the individual may knowingly and intelligently waive these rights and agree to answer questions or make a statement. But unless and until such warnings and waiver are demonstrated by the prosecution at trial, no evidence obtained as a result of interrogation can be used against him." (Emphasis supplied.)
Therefore, the crucial question involved here is the validity of the waiver and whether it was intelligently waived. The answer to the request for the signature of the defendant to the waiver, in its overall effect, was determinative of whether the defendant could or would be criminally prosecuted. The record before us conclusively shows that the right to counsel at this crucial or decisive stage was neither offered, nor the defendant advised of his right to have one, and therefore, pursuant to the Escobedo and Miranda decisions, the defendant's rights, under the Fifth and Sixth Amendments to the United States Constitution have been violated and the wrongful interrogation of the defendant precludes further prosecution.
I do not consider that the case sub judice comes within some of the borderline cases about which there is considerable debate wherein the warnings must be given to a criminal suspect when picked up by police. In this case, the State apparently had enough evidence upon which to base an indictment, if found to be true, but was insisting on what was probably intended to be a lock and key job against the defendant. The right of the defendant here violated, does not stem from the recent more liberal decisions above, but is one which basically has been an established right for years.
The majority opinion suggests that there are two main questions to be answered, namely: (1) Was the waiver of immunity constitutionally tainted and therefore a nullity because the warnings required by Miranda were not given prior to the waiver and (2) Are the guidelines laid down in Miranda applicable to proceedings before a Grand Jury and if not should this Court extend Miranda to such proceeding?
*240 I believe I have fairly well pointed out supra that interrogation before a Grand Jury is in "custodial interrogation" and that the warnings as provided in Miranda should be given. It is not a question of extending Miranda to cover Grand Jury proceedings.
The majority opinion cites the recent Florida Supreme Court case of Gordon v. Gerstein, 189 So.2d 873, decided on May 25, 1966, which was some 18 days prior to Miranda, and a rehearing denied September 21, 1966, so that the Florida Supreme Court did not have Miranda before it. But it is significant to note that the Hon. Justice Thomas, who authored that opinion, stated:
"* * * True, investigations by a grand jury are secretly held because the statute requires that they be secret but there is slight if any analogy between such procedure and that followed under Section 27.04 (F.S.). Eventually in his brief the petitioner, himself, submits that there is clearly no analogy between such inquests before a prosecutor and before a grand jury, citing Sections 905.17, 905.24 and 905.27, Florida Statutes, F.S.A."
While Miranda was dealing specifically, as to the four cases before it, consolidated, where the interrogation was in police station and other isolated setting, it did not preclude the rule therein laid down from applying equally in a setting where the defendant was confronted by a hostile barrage of State Attorneys and Assistant State Attorneys, but also, at least, some unfriendly jurors. The transcript of the proceedings before Grand Jury clearly shows that the State Attorney was not overly friendly nor overly zealous in advising the defendant of his rights. True, this occasion occurring within 30 days after Miranda was decided, the State Attorney probably had not seen the guidelines laid down in Miranda, but definitely, he did not advise the defendant that he had a right to advice of counsel before signing the waiver.
It is farfetched to conceive that the defendant intelligently waived his immunity when he had all to lose and nothing to gain thereby. Did the defendant really understand that by refusing to sign the waiver he was protected against prosecution stemming out of matters about which he was to be interrogated?
As pointed out supra, we are not called up here to decide whether a witness is entitled to an attorney at the interrogation before the Grand Jury, but we should decide that at a crucial time prior to interrogation by the Grand Jury the defendant, and definitely he was a defendant, had a right to be advised of his right of counsel before being requested to place himself in a self-incriminating position from which he could not retreat.
Therefore, I think the rule nisi should be issued.
NOTES
[1] Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977.
[2] State of Utah v. Ruggeri, Utah, 429 P.2d 969, 973.
[3] Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694.
[4] Massiah v. United States, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed. 246.
[5] Miranda v. State of Arizona, 284 U.S. 444, 86 S.Ct. 1612.
[6] People v. Tomasello, 48 Misc.2d 156, 264 N.Y.S.2d 686, 690.