PER CURIAM.
The Dade County Grand Jury indicted the defendants, Levine and Englander (ap-pellees) for conspiracy to solicit a bribe and soliciting a bribe. An information based on the indictment was filed charging them with the same crimes alleged in the indictment. The trial court entered an order granting their motion to dismiss which held that they had been immunized from prosecution for the crimes alleged in the information. The state has appealed from the order dismissing the information.
The record shows that defendant Levine, an attorney in Dade County, was requested by an assistant state attorney to come in and give a statement concerning a certain zoning matter involving one of his clients. Levine agreed to do so. The following day, Levine appeared at the state attorney’s office and prior to making a statement, signed a document entitled “Waiver of Immunity by Person Appearing Voluntarily Before the State Attorney”. Levine testified before the assistant state attorney that he had read the waiver before he signed it, understood its contents and had voluntarily signed it.
On April 9, 1969, Levine was subpoenaed to appear before the Dade County Grand Jury on April 10, 1969. Before testifying, Levine signed another document entitled “Waiver of Immunity by a Witness Appearing at the Request of the Dade County Grand Jury”. Levine testified before the Grand Jury that he had read the waiver; understood its contents based upon his legal experience; understood that he was waiving any immunity and that anything he said could be used against him; and that he freely and voluntarily signed the waiver without hesitation.
At the hearing on the motion to dismiss the information, Levine testified that he was never told he was a potential defendant prior to appearing before the state attorney or the Grand Jury. He further testified that he did not fully understand the waivers he signed and was never informed of his right of immunity from prosecution under § 932.29, Fla.Stat., F.S.A.
*195 The record reveals that Levine intelligently executed the waivers of immunity freely and voluntarily and without duress or coercion and testified before the assistant state attorney and Grand Jury.
Having intelligently and voluntarily waived immunity, the order of dismissal as to Stanley Joel Levine must be reversed. See Mattox v. Carson, 424 F.2d 202, (5th Cir.1970) opinion filed March 25, 1970; McKown v. State, Fla.1951, 54 So.2d 54; State ex rel. Reynolds v. Newell, Fla.1958, 102 So.2d 613; State ex rel. Lowe v. Nelson, Fla.App.1967, 202 So.2d 232, aff’d, Fla.1968, 210 So.2d 197; State ex rel. Foster v. Hall, Fla.App.1970, 230 So.2d 722; State of Florida v. Chadroff, Fla.App.1970, 234 So.2d 412; filed April 20, 1970; and State Bar of Michigan v. Block, 175 N.W.2d 769 (Mich.1970).
The facts concerning Englander are different. Englander was a councilman in the City of Miami Beach, Florida. He received a telephone call from an assistant state attorney. At the hearing on the motion to dismiss Englander testified that the assistant state attorney was “calling me to appear before the Grand Jury the following day * * The assistant state attorney testified he called and said:
“Mr. Englander, the Dade County Grand Jury is conducting an investigation into a matter in which you are involved.
“They have asked me to extend an invitation to you to appear to tell your side of it, if you want to appear.
“I told him that, ‘You are not being subpoenaed, you are being invited to appear, and if you do not wish to do so, you do not have to do so.’
“He said that he did want to appear and tell his side of it and I said, ‘Very well. The Grand Jury will be glad to hear from you at three.’ ”
Englander appeared without subpoena the following day before the Grand Jury and after being sworn was asked:
“Q. Mr. Englander, have you read this waiver of immunity you brought into the room with you ?
“A. I have.
“Q. Do you understand its contents, sir?
“A. Yes.
“Q. You understand that by voluntarily executing it you waive any right you might have from immunity to prosecution for anything you testify to here today and that anything you may say here which is incriminating can be used against you in a court of law ?
“A. Yes.
“Q. Did you voluntarily sign this waiver, sir?
“A. Yes.
“Q. Did you sign it because of some fear of losing your official position as a City Councilman of the City of Miami Beach ?
“A. No.
“Q. Did you sign it because of some fear that you might be prosecuted in the Metropolitan Court if you refuse to sign it ?
“A. No.”
Subsequently, he thanked the Grand Jury and the assistant state attorney for inviting him to appear and later the following occurred before the Grand Jury.
“Q. For the record, did you understand from our telephone conversation of yesterday that you were to appear here only if you wanted to?
“A. Yes, sir.
*196 “Q. That it was an invitation for you to appear if you wanted to ?
“A. You made that clear to me, yes. And I again state that I am grateful for the opportunity, because I can appreciate that a lot of subsequent heartache can be avoided by coming in at this stage of the proceedings and making revelations that are requested.”
At the hearing on the motion to dismiss the information Englander stated that he agreed to testify before the Grand Jury and to waive immunity because of the provisions of the Charter of Metropolitan Dade County, which provides:

"Section 8.02 Waiver of Immunity

Any county or municipal officeholder or employee who, upon being called before a grand jury to testify concerning the conduct of his office or the performance of his official duties or employment, refuses to sign a waiver of immunity against subsequent criminal prosecution, or to answer any relevant question concerning such matters before the grand jury shall be removed from office or public employment by the appropriate authority, or upon suit by the State Attorney of this county.”
and the provisions of the following ordinance :

"Section 2-55 Penalty for Violations

Any person who wilfully violates any provision of this division shall be guilty of an offense, triable in the metropolitan court, and shall upon conviction be punished by a fine not to exceed one thousand dollars, or by imprisonment in the county jail not to exceed twelve months, or both.”
No argument has been raised on this appeal to the propriety or validity of the charter provision insofar as it applies to municipal officeholders.
At the hearing on the motion to dismiss Englander testified he feared he would lose his elected position and be subject to a fine under the terms of the charter and ordinance if he did not testify, or refused to sign a waiver of immunity before the Grand Jury.
In State v. Dayton, Fla.App.1968, 215 So.2d 87, Dayton, a public official, appeared before the Dade County Grand Jury and, prior to signing a waiver of immunity, testified that he was not signing it out of fear of losing his official position. However, he was not questioned as to any fear of possible prosecution in the Metropolitan Court. Based on the lack of that question, this Court ruled that Dayton’s waiver was involuntary, and said in part as follows:
“The existence of the compulsive ordinance would not necessarily result in such immunity for an employee who signed a waiver of immunity. The waiver, if knowingly and voluntarily made, would be effective, and whether it is so made in a given instance is a question of fact. The record in this case would support a finding of voluntariness notwithstanding the ordinance relating to loss of position, but such is not the case as to the other ordinance which prescribed the criminal penalties. As to the latter, the trial court’s ruling granting immunity to Dayton was correct and required under Garrity v. State of New Jersey, supra.”
Here, the essential question is “was there an intelligent and voluntary waiver” by Englander. Here, contrary to Dayton, Englander was specifically asked questions at his voluntary appearance before the Grand Jury which were designed to show that he did not sign the waiver of immunity because of some fear he might lose his position as a city councilman of Miami Beach or because he might be prosecuted in the Metropolitan Court of Dade County if he refused to sign the waiver.
The “compulsion” claimed here is that Englander was compelled by the charter and the ordinance to choose “between the rock and the whirlpool,” and that he was *197 compelled to testify before the Grand Jury and to waive immunity. The evidence shows that the provisions of the Metropolitan charter and the ordinance were called to his attention by specific questions and that he testified he voluntarily signed the waiver without fear of losing his official position or of being prosecuted if he refused to sign.
We find no duress, coercion or compulsion and the evidence shows that there was an intelligent and voluntary waiver of immunity and that Englander admitted he was under no fear and that he was not compelled to appear, testify or execute the waiver of immunity under threat or penalty of the ordinance and the charter provision.
The order of dismissal as to each appel-lee is reversed and the cause remanded for further action consistent herewith.