246 So.2d 746 (1971)
Malvin ENGLANDER, Petitioner,
v.
The STATE of Florida, Respondent.
No. 40162.
Supreme Court of Florida.
April 7, 1971.
Rehearing Denied May 12, 1971.
*747 Louis M. Jepeway, Jr., of Jepeway, Gassen & Jepeway, and Frates, Fay, Floyd & Pearson, Miami, for petitioner.
Robert L. Shevin, Atty. Gen., Richard E. Gerstein, State's Atty. and Joseph Durant, Asst. State's Atty., for respondent.
BOYD, Justice.
This cause is before us on petition for writ of certiorari to review the decision of the District Court of Appeal, Third District, reported at 237 So.2d 193. The decision sought to be reviewed conflicts with Davis v. State, 233 So.2d 641 (Fla.App.2d 1970).
The Dade County Grand Jury indicted Stanley Joel Levine and Malvin Englander for conspiracy to solicit a bribe and soliciting a bribe. Subsequently an Information based on the indictment was filed charging the same crimes alleged in the indictment. The trial court entered an order granting defendant's motion to dismiss on the grounds that they had been immunized from prosecution for the crimes alleged in the Information. The State appealed and the District Court, in the decision herein sought to be reviewed, reversed the order of dismissal as to each defendant and remanded the cause for further proceedings.
The petition of Stanley Joel Levine for writ of certiorari was dismissed sua sponte by this Court because not filed within thirty (30) days from the rendition of the decision sought to be reviewed.[1] The petition presently under consideration is concerned solely with that portion of the District Court's opinion which reverses the dismissal of the Information against Malvin Englander.
Petitioner Englander was, prior to his suspension from office by the Chief Executive, a duly elected member of the City Council of the City of Miami Beach, Dade County, Florida, and an attorney at law admitted to practice before the Bar of this State since 1942. Englander testified that he received a telephone call from the Assistant State Attorney to appear before the Grand Jury the following day. The *748 Assistant State Attorney testified that he extended an "invitation" to Englander to appear and tell his side of the story, if he wanted to. Englander was not subpoenaed but he did appear before the Grand Jury on April 10, 1969. The trial court found that Englander "was called to testify before the Dade County Grand Jury * * * his appearance being the result of a telephone call from the Assistant State Attorney * * *."
Petitioner Englander, on appearance before the Grand Jury, after being sworn, was asked:
"Q. Mr. Englander, have you read this waiver of immunity you brought into the room with you?
"A. I have.
"Q. Do you understand its contents, sir?
"A. Yes.
"Q. You understand that by voluntarily executing it you waive any right you might have from immunity to prosecution for anything you testify to here today and that anything you may say here which is incriminating can be used against you in a court of law?
"A. Yes.
"Q. Did you voluntarily sign this waiver, sir?
"A. Yes.
"Q. Did you sign it because of some fear of losing your official position as a City Councilman of the City of Miami Beach?
"A. No.
"Q. Did you sign it because of some fear that you might be prosecuted in the Metropolitan Court if you refuse to sign it?
"A. No."
The trial court, on motion to dismiss the information for bribery against Englander, held that the waiver of immunity signed by Englander was invalid because not freely and voluntarily made due to the office-forfeiture provision § 8.02 of the Charter of Metropolitan Dade County, which provided as follows:
"Any county or municipal officeholder or employee who, upon being called before a grand jury to testify concerning the conduct of his office or the performance of his official duties or employment, refuses to sign a waiver of immunity against subsequent criminal prosecution, or to answer any relevant question concerning such matters before the grand jury shall be removed from office or public employment by the appropriate authority, or upon suit by the State Attorney of this county."
The trial court and the District Court of Appeal incorrectly considered the following code provision, which relates only to county officials and employees:
"Section 2-55 Penalty for Violations
"Any person who wilfully violates any provision of this division shall be guilty of an offense, triable in the metropolitan court, and shall upon conviction be punished by a fine not to exceed one thousand dollars, or by imprisonment in the county jail not to exceed twelve months, or both."
The District Court reversed the order of dismissal and held that petitioner Englander could and did effectively and voluntarily waive his right of immunity from prosecution under Florida Statutes § 932.29, F.S.A. This decision conflicts with the Davis case, supra, wherein the decision of the United States Supreme Court in Garrity v. New Jersey[2] is discussed as follows:
"Garrity v. New Jersey * * * holds that a state cannot compel a public employee *749 to waive Fifth Amendment rights at the cost of his job if he refuse. Therefore, a coerced waiver is invalid."
In Garrity, the United States Supreme Court held that statements made by policemen under threat of removal from office, were not voluntary and could not be used in subsequent criminal prosecutions against the policemen. The Court in Garrity stated:[3]
"The choice given petitioners was either to forfeit their jobs or to incriminate themselves. The option to lose their means of livelihood or to pay the penalty of self-incrimination is the antithesis of free choice to speak out or to remain silent.
* * * * * *

"Where the choice is `between the rock and the whirlpool,' duress is inherent in deciding to `waive' one or the other." (e.s.)
Subsequently, in the case of Gardner v. Broderick[4] the United States Supreme Court held invalid a job forfeiture charter provision of the City of New York which was similar to the charter provision involved herein. In Gardner, the Court stated:[5]
"In any event, the mandate of the great privilege against self-incrimination does not tolerate the attempt, regardless of its ultimate effectiveness, to coerce a waiver of the immunity it confers on penalty of the loss of employment."
As a result of the holding in the Gardner case, the County conceded[6] the unconstitutionality of Section 2-51, Code of Metropolitan Dade County,[7] relating to forfeiture of office by any person in the county service who refused to testify or waive immunity for self-incrimination and that provision was repealed July 23, 1969.[8] Section 2-51 of the Code, like Section 2-55, supra, were not applicable to petitioner in any event, although there was confusion about this in the proceedings below.
Section 8.02 of the Charter was repealed by vote of the people on November 5, 1969. This change occurred after the proceedings below. Petitioner Englander's appearance before the Grand Jury was in April of 1969, at a time when the forfeiture provision was still in effect.
The criminal penalty provision 2-55 of the County Code, set out above, related only to violations of Division 2 of the Code,[9] which division includes Section 2-51 of the Code prohibiting county officials and county employees from refusing to testify before grand juries or from waiving immunity. Because petitioner was an elected *750 city councilman of Miami Beach, the criminal penalty provisions relating to county officials and employees did not relate to him and he was wholly exempt from those provisions. Therefore the only compulsion to which petitioner was subjected was the threat of the loss of his elective office as a Miami Beach City Councilman.
Petitioner was questioned by the State Attorney before the Dade County Grand Jury as to possible criminal prosecution should he fail to testify and later, at the hearing on motion to dismiss, stated that his waiver was executed out of fear of criminal prosecution as well as removal from office. His mistaken belief, shared by the State and courts below, that he was subject to a criminal penalty, does not constitute a basis for invalidating his waiver of immunity.
The question presented is whether § 8.02 of the Charter, providing for removal from office of county and municipal officials who refuse to waiver immunity and testify before grand juries, renders petitioner's waiver of immunity involuntary. Applying the federal standard set out in the Garrity and Gardner decisions, supra, we hold that the waiver was involuntary.
Because the forfeiture provision applied to Englander at the time of his appearance before the Grand Jury, he was caught "between the rock and the whirlpool" as stated in Garrity, and could not voluntarily waive immunity from prosecution under Florida Statutes § 932.29. The threat of loss of office dictated the involuntary nature of the waiver he signed.
Florida Statutes § 932.29, F.S.A., as it existed at the time of petitioner's appearance before the Grand Jury, provided in pertinent part as follows:[10]
"No person shall be excused from attending and testifying * * * upon any investigation, * * * for a violation of any of the statutes of this state against bribery, * * * upon the ground or for the reason that the testimony or evidence, documentary or otherwise, required of him may tend to convict him of a crime or to subject him to a penalty or forfeiture, but no person shall be prosecuted or subjected to any penalty or forfeiture for or on account of any transaction, matter or thing concerning which he may so testify * * * and no testimony so given or produced shall be received against him upon any criminal investigation or proceeding."
Under the foregoing statute, petitioner is immunized from prosecution on the bribery charges about which he testified before the Grand Jury in April of 1969. His testimony was "required of him" as specified by § 932.29. Under the Charter provision, set out above, he was compelled to testify or suffer forfeiture of office.
Petitioner has also raised the issue of "Miranda warnings" which were not given him at the time of his waiver of immunity and testimony. In State ex rel. Lowe v. Nelson,[11] this Court adopted the opinion of the District Court of Appeal, First District,[12] holding that the decision of Miranda v. State of Arizona,[13] relates to custodial interrogations and is not applicable to witnesses before the Grand Jury.
Accordingly, the decision of the District Court is quashed and the cause remanded with instructions to reinstate the order of the trial court dismissing the Information as to Malvin Englander.
It is so ordered.
ROBERTS, C.J., and ERVIN, CARLTON, ADKINS, McCAIN and DEKLE, JJ., concur.
NOTES
[1] Levine v. State, 240 So.2d 814 (Fla. 1970).
[2] 385 U.S. 493, 87 S.Ct. 616, 17 L.Ed.2d 562 (1967).
[3] Id. at 497, 498, 87 S.Ct. at 618, 619.
[4] 392 U.S. 273, 88 S.Ct. 1913, 20 L.Ed.2d 1082 (1968).
[5] Id. at 279, 88 S.Ct. at 1916.
[6] Sellers v. Culbertson, 224 So.2d 808 (Fla. App.3rd 1969).
[7] Section 2-51: "If any person in the county service shall willfully refuse or fail to appear before any court or judge, any legislative committee or any officer, board or body authorized by law to conduct any hearing or inquiry, or having appeared shall refuse to testify or answer any question relating thereto on the ground that his testimony or answer would tend to incriminate him, or shall refuse to waive immunity from prosecution on account of any matter about which he may be asked to testify at any such hearing or inquiry, or if any such person shall refuse to answer any questions concerning the particular branch of the county service in which such person is employed, which may be asked him by the head of his department or by any other person authorized by the County Commissioners or by another elected official, as the case may be, to ask any such question, he shall forfeit his office or position and shall not be eligible thereafter for appointment to any position in the county service."
[8] Dade County Ord. No. 69-48 § 1 (July 23, 1969).
[9] "Section 2-54. Applicability of provisions. This division shall apply only to that part of the county service defined herein as the classified service. (Ch. 30255, § 20, Laws 1955)."
[10] Laws of Florida, Ch. 7858, § 1 (June 9, 1919). This act subsequently was amended effective October 1, 1969, Laws of Florida, Ch. 69-316, § 1.
[11] 210 So.2d 197 (Fla. 1968).
[12] 202 So.2d 232 (Fla.App. 1st 1967).
[13] 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).