288 So.2d 223 (1973)
Dr. Jack LURIE, Petitioner,
v.
FLORIDA STATE BOARD OF DENTISTRY, Respondent.
No. 42715.
Supreme Court of Florida.
October 10, 1973.
Rehearing Denied February 8, 1974.
*224 Herbert Stettin, Friedman, Britton & Stettin, Miami, for petitioner.
Richard L. Randle, Slater & Randle, Jacksonville, for respondent.
ERVIN, Justice.
We review on petition for writ of certiorari a per curiam without opinion decision of the District Court of Appeal, Fourth District, in Lurie v. Florida State Board of Dentistry, Fla.App., 264 So.2d 479.
From the record proper it appears we have jurisdiction for a certiorari review as will hereinafter appear.
The question to be decided is whether a grant of compelled testimony immunity from criminal prosecution which, at the time granted in 1967, included immunity from administrative proceedings based upon the same acts, would continue to render the recipient immune from later administrative proceedings despite the decision of Headley v. Baron, Fla. 1969, 228 So.2d 281.
*225 The facts in the case are: On August 30, 1967 Petitioner was compelled to testify before the County Solicitor of Brevard County regarding alleged illegal transactions between himself and Arnold Rosenbaum. At that time charges were pending against Rosenbaum, who allegedly had been in possession of a stolen Cadillac and had made a false statement on an application for an automobile title certificate. The interrogation of Petitioner not only concerned the charges against Rosenbaum, but also involved matters relating to the operation of a stolen car ring in Brevard County and Petitioner's acquisition of two automobiles from Rosenbaum.
One year later Petitioner was informed against for receiving a stolen automobile and aiding Rosenbaum in the concealment of stolen property.
Petitioner sought a writ of prohibition from the Fourth District Court of Appeal, contending he was immune from prosecution under Section 932.29, F.S. 1967, F.S.A., which provided that a person could not be excused from testifying in certain prosecutions on the ground he might incriminate himself, but when he did so testify he could not "be prosecuted or subjected to any penalty or forfeiture for or on account of any transaction, matter, or thing concerning which he may so testify..."
While that cause was pending, this Court on July 16, 1969 in Headley v. Baron, Fla. 1969, 228 So.2d 281, overruled Florida State Board of Architecture v. Seymour, Fla. 1952, 62 So.2d 1. Seymour held the above-quoted portion of Section 932.29, which grants immunity from prosecution or from subjection to "any penalty or forfeiture," was not limited in application to criminal prosecutions, but also provided immunity from subjection to administrative revocation of professional license proceedings. Headley, however, held that "the words `penalty or forfeiture' when read in the entire context of Section 932.29 clearly refer [only] to a criminal penalty of forfeiture." Under Headley, therefore, Section 932.29 grants immunity only from criminal prosecutions and can not be used to immunize one against loss of a professional license in an administrative proceeding as a result of grand jury testimony.
On September 19, 1969 the Fourth District Court of Appeal made absolute the writ of prohibition and held that Petitioner was immune from the criminal prosecution for his activities with Rosenbaum. State ex rel. Lurie v. Rosier, Fla.App. 1969, 226 So.2d 825.
On June 22, 1971 Respondent Board of Dentistry filed a two-count accusation against Petitioner, a state licensed dentist, charging him with (1) wilful negligence and malpractice in the removal of a tooth, and (2) conspiracy and concealment of stolen cars. Petitioner filed a motion to dismiss, contending, among other things, that he was fully immune from any administrative penalty or forfeiture for his alleged stolen car actions because of Section 932.29 and the District Court mandate in State ex rel. Lurie v. Rosier, supra. The Board found him guilty as charged and on August 21, 1971 revoked his license for one year on the malpractice charge and permanently on the concealing stolen automobile charge.
Petitioner filed a petition for writ of certiorari with the District Court of Appeal, Fourth District; that court per curiam without opinion denied the petition on June 30, 1972. See 264 So.2d 479.
We granted the Petition for Writ of Certiorari because of conflict with this Court's decision in Florida Forest and Park Service v. Strickland, 1944, 154 Fla. 472, 18 So.2d 251, where we held:
"That where a statute has received a given consideration by a court of supreme jurisdiction and property or contract rights have been acquired under and in accordance with such construction, such rights should not be destroyed by giving to a subsequent overruling decision a retrospective operation." (Emphasis supplied.)
*226 We have re-examined the cases of Headley v. Baron, supra, and Florida State Board of Architecture v. Seymour, supra, in the light of the circumstances of this case and also in the light of the weight of judicial authority throughout the nation on the question of citizens' immunities from the imposition of penalties and forfeitures in administrative proceedings where they are compelled to testify before grand juries, prosecuting officers, or courts concerning matters or things which might incriminate them. We are convinced now this Court was in error in overruling Florida State Board of Architecture v. Seymour, supra. See 9 Fla.Jur., Criminal Law § 276; 1 Fla.Jur., Administrative Law and Procedure § 82, and 68 A.L.R. 1503; 2 Am.Jur.2d Administrative Law §§ 267, 268, 269. Compare Shapiro v. United States, 335 U.S. 1, 68 S.Ct. 1375, 92 L.Ed. 1787, reh. den., 335 U.S. 836, 69 S.Ct. 9, 93 L.Ed. 388; Smith v. United States, 337 U.S. 137, 69 S.Ct. 1000, 93 L.Ed. 1264, annotation; Englander v. State (Fla.), 246 So.2d 746, and Lefkowitz v. Turley, 94 S.Ct. 316, 37 L.Ed.2d 274. Opinion filed November 19, 1973.
Where testimony is so compelled the person (witness) testifying should have the benefit of immunity statutes or other protections afforded by law. As Justice Terrell pointed out in the Seymour case, the guarantee must be as broad as the constitutional guaranty. He also said for the Seymour court, "A forfeiture is also a penalty and has to do with loss of property, position or some other personal right ..." and, "It is accordingly our view that a proceeding to revoke appellee's certificate as an architect amounts to a prosecution to effect a penalty or forfeiture as contemplated by the (statute) ..." 62 So.2d, text page 3. See State ex rel. Vining v. Florida Real Estate Commission (Fla.), 281 So.2d 487 headnote two.
That the testimony Petitioner was compelled to give in 1967 to the County Solicitor of Brevard County fell in immune category was resolved by the Fourth District Court's decision in State ex rel. Lurie v. Rozier, supra.
Immunity extended by the State under Section 932.29, F.S., F.S.A., 1967 in surrender of the Fifth Amendment privilege is not divisible so that the protection vouchsafed thereunder is only from criminal prosecution. This result can be ascertained from a cursory reading of Section 932.29, F.S., F.S.A., 1967:
"No person shall be excused from attending and testifying ... before any court upon any investigation, proceeding or trial ... but no person shall be prosecuted or subjected to any penalty or forfeiture for or on account of any transaction, matter or thing concerning which he may so testify or produce evidence, documentary or otherwise, and no testimony so given or produced shall be received against him upon any criminal investigation or proceeding." (Emphasis supplied.)
As Justice Terrell stated in Seymour, supra, 62 So.2d, at 3: "Whether the prosecution, penalty or forfeiture has to do with a civil or criminal action is not material. The statute [932.29, F.S.] makes it applicable to both."
Such an interpretation is not a strained construction of the Legislature's enactment, but rather one which comports realistically and honestly with the professed immunity grant. The State through its authorized officials in granting immunity to a witness acts totally for the State, including its licensing agencies. A professional state licensing board must respect the immunity granted similarly as must the prosecuting attorney. To be efficacious in securing testimony of a citizen the immunity extended must be coextensive with all possible governmental penalties and forfeitures, criminal or civil. Persons holding professional licenses cannot be excepted from total immunity protection.
Our recent holding in State ex rel. Vining v. Florida, supra, supports the principle *227 that immunity from the imposition of penalties extends to administrative proceedings. In that case a real estate broker was charged with several violations of the Real Estate License Law. He moved to quash the information alleging, inter alia, that the requirement of filing a sworn answer pursuant to Section 475.30(1) violated his right to remain silent guaranteed to him by the Fifth Amendment of the United States Constitution and Article I, Section 9 of the Florida Constitution, F.S.A. In relying upon Spevak v. Klein, 385 U.S. 511, 87 S.Ct. 625, 17 L.Ed.2d 574 (1967), we stated that the U.S. Supreme Court's logic of making available the constitutional privilege against self-incrimination to a lawyer in a disbarment proceeding
"... [extends] as well to other types of administrative proceedings which may result in deprivation of livelihood. Certainly, threatened loss of professional standing through revocation of his real estate license is as serious and compelling to the realtor as disbarment is to the attorney. In succinct terms, it is our view that the right to remain silent applies not only to the traditional criminal case, but also to proceedings `penal' in nature in that they tend to degrade the individual's professional standing, professional reputation or livelihood."
The immunity extended by the State under Section 932.29, F.S., F.S.A., serves as a partial, in lieu replacement for the protection that otherwise would have been available to Petitioner Lurie under the Fifth Amendment, and while
"It is true that the statement of the privilege in the Fifth Amendment, which is applicable to the States by reason of the Fourteenth Amendment, is that no person `shall be compelled in any criminal case to be a witness against himself' ... it is also clear that the availability of the privilege does not turn upon the type of proceeding in which its protection is involved, but upon the nature of the statement or admission and the exposure which it invites. The privilege may, for example, be claimed in a civil or administrative proceeding, if the statement is or may be inculpatory." In re Gault, 387 U.S. 1 at 49, 87 S.Ct. 1428 at 1455, 18 L.Ed.2d 527 at 558 (1967).
Fifth Amendment freedoms are never lightly surrendered. Consequently, the state on its part should not be technically "sharp" or narrow in honoring its immunity commitment. When it professes to extend total immunity by statute its judiciary should not circumscribe or hedge or renege in part its solemn promise with exceptions permitting imposition of certain penalties and forfeitures in administrative proceedings. To do so would not only debilitate the effectiveness of the immunity grant; it would also invariably serve to engender distrust for a state officer's promise. Fundamental fairness dictates an open and aboveboard agreement between both parties, the state and the witness. No hypocrisy or pretense can be indulged in by the state to break so solemn a pledge when a witness is compelled by law to testify.
There are those who would hyperbolically parade the horribles of felons disguised as physicians or lawyers preying on unsuspecting patients or clients under a cloak of governmental immunity. Such feared abuses and evils ordinarily never transpire because prosecuting officers exercise reasonable discrimination in granting statutory immunity. A certain degree of confidence must be placed in state attorneys and other officials by assuming they will not recklessly grant immunity to the extent of opening floodgates for great numbers of the unscrupulous to professionally victimize the public. It is to be assumed that such officials will act so as to use this bargaining tool to the state's greatest advantage without appreciable victimization of the public. Were we to judicially narrow the scope of immunity, we would emasculate *228 that advantage at a far greater expense to the citizenry than would otherwise occur  and in the process raise serious doubts as to the state's good faith.
Conflict of decisions invoking our jurisdiction herein arose because the Fourth District gave a retroactive application to the holding in Headley v. Baron (decided in 1969), supra, to the question whether Petitioner was rendered immune to a forfeiture of his dental license at the time he was compelled to testify in 1967, contrary to the rationale of Florida Forest and Park Service v. Strickland, supra. We conclude that Petitioner had a sufficient property right in his dental license as state-agreed in § 932.29 and explicated in Seymour to receive the protection of the rule of the Strickland case. However, we rest our decision here not on retroactivity, but on reinstatement of the holding in Seymour.
We acknowledge that the Florida State Board of Dentistry and the Fourth District Court of Appeal should not be held accountable for error because they took the Headley case at face value. This Court freely acknowledges that its erroneous decision in that case generated the related action below.
We direct that the order revoking Petitioner's dental license be quashed, but that the one-year suspension for malpractice stand.
It is so ordered.
BOYD, McCAIN and DEKLE, JJ., concur.
DREW, J. (Retired), dissents with Opinion.
ROBERTS, Acting C.J., and ADKINS, J., dissent.
DREW, Justice, Retired (dissenting):
I dissent on both the assumption of jurisdiction and on the merits.

JURISDICTION
The decision of the District Court of Appeal simply states "Certiorari Denied". Petitioner argues that it was on the authority of the decision of this Court in Headley v. Baron, 228 So.2d 281 (Fla. 1969).[1] But, he asserts, Headley should be prospective only and, since Lurie, the petitioner here, was granted immunity from criminal prosecution for receiving a stolen automobile before the decision in Headley, [which held such immunity did not protect one from administrative disciplinary proceedings] that Headley[2] was not controlling. Petitioner's argument on this point, taken from his original brief, states "The general rule is that the overruling of a decision is ordinarily retrospective as well as prospective in application, and makes the law at the time of the overruled decision as it is declared to be in the overruling decision." An exception to this general rule is, however, that "an overruling decision cannot operate retrospectively so as to impair the obligations of contracts entered into or injuriously affect vested rights acquired *229 in reliance on the overruled decision". 21 C.J.S. Courts § 194b. (Emphasis added) In other words, that Lurie acquired a vested right under Seymour to be immune from disciplinary proceedings by the respondent board for unethical conduct arising out of the criminal acts for which he was granted immunity from prosecution in the criminal proceedings. Such argument is obviously false for the simple reason that the right to practice dentistry  as well as medicine or law or other professions that are publicly licensed and regulated  is not a vested right as used in the cases.[3] Therefore, I find no vestige of conflict to support jurisdiction.
Moreover, it seems to me ironical that this Court could overrule its previous decision  on the basis of which the District Court admittedly decided the case under review  and then hold that the District Court's decision conflicted with a previous decision of this Court on the same point of law. And yet, that is exactly what has been done here.

MERITS
The statute involved here is now Sec. 914.04 Florida Statutes (F.S.A.). It reads as follows:
"No person, having been duly served with a subpoena or subpoena duces tecum, shall be excused from attending and testifying or producing any book, paper, or other document before any court having felony trial jurisdiction, grand jury, state attorney, or county solicitor, upon investigation, proceeding, or trial for a violation of any of the criminal statutes of this state upon the ground or for the reason that the testimony or evidence, documentary or otherwise, required of him may tend to convict him of a crime or to subject him to a penalty or forfeiture, but no person shall be prosecuted or subjected to any penalty or forfeiture for or on account of any transaction, matter, or thing concerning which he may so testify or produce evidence, documentary or otherwise, and no testimony so given or produced shall be received against him upon any criminal investigation or proceeding." (Emphasis added)
The statute refers to the criminal statute, to the conviction of a crime and that no testimony so given or produced shall be received against him upon any criminal investigation or proceedings. The statute, it is respectfully submitted, clearly refers to criminal prosecution and is limited thereto.
The statute allows the State's Prosecutor to grant immunity in a criminal prosecution to one of the participants of a crime in order to require his testimony to convict the other participants of the crime. The statute is rooted in the criminal law and applies only to criminal law. From the very beginning, this statute was one granting immunity only from criminal prosecution.
In Headley v. Baron, supra, we thoroughly analyzed the immunity statute, formerly 932.29 and now Section 914.04, Florida Statutes, F.S.A., not only on the question of the immunity statute, but also the "forfeiture rule", which is not involved in this case and therefore is not before this Court.
The record shows that petitioner did not testify before an assistant state's attorney because of any statute, ordinance or rule which required him to testify or lose his job. This Court answered any question in this regard in Headley when we said:
"Baron did not testify before the grand jury because of the `forfeiture rule.' His claimed protection here is the `immunity *230 statute,' not some benefit or amnesty promised by the `forfeiture rule'. This distinguishes the instant case from Garrity v. New Jersey, 385 U.S. 493, 87 S.Ct. 616, 17 L.Ed.2d 562 (1967). There, New Jersey had no immunity statute. Garrity, a police chief, testified in response to an investigation subpoena under the compulsive pressure of a job forfeiture statute. In a subsequent criminal proceeding, a confession which he made during the investigation was held to be inadmissible against him because it had been coerced by the statutory threat of removal from office if Garrity had claimed the benefit of his constitutional privilege against self-incrimination. Garrity involved a criminal prosecution based on a confession compelled by the threat of removal from office."
Petitioner in his second brief on the merits[4] relies heavily upon the overruled case of Florida State Board of Architecture v. Seymour, 62 So.2d 1 (Fla. 1952). The statutes at that time should be examined. The opinion there sets forth Sections 838.08 and 932.29 (now 914.04), Florida Statutes 1941, F.S.A., and said Section 838.08 was set forth as follows:
"838.08. Any person giving a reward, compensation or remuneration prohibited by § 838.06 shall not be privileged from testifying, but if he does testify, nothing said by him in his testimony shall be admissible in evidence in any civil or criminal action against him." (Emphasis added)
This statute was amended in 1961 and now reads as follows:
"No person shall be excused from attending and testifying, or producing any book, paper or other document, before any court upon any investigation, proceeding or trial for a violation of either § 838.06 or § 838.071, upon the ground or for the reason that the testimony or evidence, documentary or otherwise, required of him may tend to incriminate him or subject him to a penalty or forfeiture. However, no person shall be prosecuted or subjected to any penalty or forfeiture for or on account of any transaction, matter or thing concerning which he may so testify or produce evidence, documentary or otherwise, and no testimony so given or produced shall be received against him upon any criminal investigation or proceeding." (Emphasis added)
The Legislature removed from the statute the language that nothing said should be admissible into evidence in any civil or criminal action. It is apparent that the Legislature meant to and did delete any reference other than upon criminal investigation or proceedings, which is exactly what we held in Baron.
In the Seymour case, supra, this Court said that the statute exempted anyone from prosecution, penalty or forfeiture, and then stated that the real point for determination was whether or not the proceeding for revocation of an architect's certificate amounts to a prosecution, penalty or forfeiture contemplated by the statute, and then goes on to say:
"... Whether the prosecution, penalty or forfeiture has to do with a civil or criminal action is not material. The statute first quoted makes it applicable to both."
The statute referred to by this Court was changed and amended after this opinion, and it is quite clear that the first statute no longer (if it ever did) makes it applicable to both. The first statute he was referring to was Section 838.08, Florida Statutes, F.S.A.
*231 Seymour cites a New York case, In re Rouss, 221 N.Y. 81, 116 N.E. 782, in which this Court stated:
"... It is true that in this case the Court of Appeals of New York held that a proceeding of disbarment was not a prosecution, penalty or forfeiture within the terms of the New York immunity statute... ."
It is abundantly clear that the words penalty and forfeiture in the statute involved here relate to the consequence of a criminal prosecution and conviction, and it is respectfully submitted that any other interpretation would be to read into the statute something which is simply not there. Garrity v. New Jersey, supra, has no applicability here. We are concerned with an immunity statute. We are not concerned with a criminal prosecution, nor a constitutional right, nor with a statute or ordinance compelling someone to testify. There is no analogy made between the Garrity case and the case before this Court.
The right to earn a living and the privilege of practicing dentistry are not one and the same. A person who has, through improper conduct in the practice of dentistry, had such privilege revoked or suspended may, in accordance with Chapter 466.08(6), Florida Statutes, F.S.A., initiate proceedings relative to the reissuance of a revoked or suspended license.
The Court today  in the shadow of Watergate  has made a tragic mistake in overruling Baron, supra. It is a regressive step. Its implications and consequences are impossible to calculate. The majority hold that if one of the officials or agencies designated in the statute had knowledge of an illegal drug ring and had reasons to believe that a dentist was or was not connected therewith, but could supply information, called the dentist in to question him concerning such traffic and thereupon found that not only was the dentist dealing and trafficking in said drugs, but was even conspiring to steal said drugs and dispensing them to, in addition to his dental patients, minors and small children, the officer by questioning the dentist would be granting him immunity from prosecution. If this were also extended to the profession of dentistry and its administrative procedures, as the majority now hold, not only could the dentist continue in the practice of dentistry, but also his federal narcotic stamp could be retained, allowing him to purchase and dispense narcotics. If this decision stands, the mandate laid down by the Legislature to protect the health, safety and welfare of the public will become sterile.
In In re Rouss, supra, Mr. Justice Cardozo construes a New York statute using, in part, the exact language of the Florida Statute relating to penalty or forfeiture as it relates to disciplinary proceedings against a lawyer. Justice Cardozo, after explaining the charges of misconduct preferred against the attorney, states:
"... To these charges he makes answer that he is immune from discipline by force of section 584 of the Penal Law, which says that:
"`No person shall be excused from attending and testifying, or producing any books, papers or other documents before any court, magistrate or referee, upon any investigation, proceeding or trial, for a violation of any of the provisions of this article (article 54, and defining and punishing conspiracy), upon the ground or for the reason that the testimony or evidence, documentary or otherwise, required of him may tend to convict him of a crime or to subject him to a penalty or forfeiture; but no person shall be prosecuted or subject to any penalty or forfeiture for or on account of any transaction, matter or thing concerning which he may so testify or produce evidence, documentary or otherwise, and no testimony so given or produced shall be received against him, upon any criminal investigation, proceeding or trial.'

*232 "The question is whether disbarment is a penalty or forfeiture within the meaning of that statute.
"Membership in the bar is a privilege burdened with conditions. A fair private and professional character is one of them. Compliance with that condition is essential at the moment of admission; but it is equally essential afterwards. Selling v. Radford, 243 U.S. 46, 37 S.Ct. 377, 61 L.Ed. 585; Matter of Durant, 80 Conn. 140, 147, 67 A. 497, 10 Ann.Cas. 539. Whenever the condition is broken the privilege is lost. To refuse admission to an unworthy applicant is not to punish him for past offenses. The examination into character like the examination into learning, is merely a test of fitness. To strike the unworthy lawyer from the roll is not to add to the pains and penalties of crime. The examination into character is renewed; and the test of fitness is no longer satisfied. For these reasons courts have repeatedly said that disbarment is not punishment. Ex Parte Wall, 107 U.S. 265, 2 S.Ct. 569, 27 L.Ed. 552; Matter of Randall, 11 Allen (Mass.) 473, 480; Matter of Randel, 158 N.Y. 216, 52 N.E. 1106; Boston Bar Ass'n. v. Casey, 211 Mass. 187, 192, 97 N.E. 751, 39 L.R.A.(N.S.) 116, Ann.Cas. 1913A, 1226; Matter of Durant, supra.
"`The question is', said Lord Mansfield, `whether, after the conduct of this man, it is proper that he should continue a member of a profession which should stand free from all suspicion.' Ex parte Brounshall, Cowp. 829.
"`It is not', he continued, `by way of punishment; but the court, on such cases, exercise their discretion whether a man whom they have formerly admitted is a proper person to be continued on the roll or not.'"
The Court goes on to say:
"The problem before us, let it be recalled, is one solely of statutory construction. There is no question of constitutional right. The Constitution says that no person `shall be compelled in any criminal case to be a witness against himself.' Const. art. 1, § 6. A proceeding looking to disbarment is not a criminal case. Matter of Randel, supra. We do not suggest that the witness is protected by the Constitution only when testifying in the criminal courts. The law is settled to the contrary. But to bring him within the protection of the Constitution, the disclosure asked of him must expose him to punishment for crime. There may be a broader privilege by statute or at common law. If that is so, the Constitution does not assure its preservation. Perrine v. Striker, 7 Paige, 598, 602; People ex rel. Hackley v. Kelley, 24 N.Y. 74, 82 83; Counselman v. Hitchcock, 142 U.S. 547, 562, 12 S.Ct. 195, 35 L.Ed. 1110.
"Where speech will expose to penalties unrelated to crime, the Legislature may withdraw the privilege of silence. It has done so in the past. Perrine v. Striker, supra; Robinson v. Smith, 3 Paige, 222, 231, 24 Am.Dec. 212. It may do so again.
"...
"Following that suggestion, section 584 of the Penal Law and like statutes (see, e.g., Penal Law, §§ 380 and 381) were enacted. Their purpose was to make the Constitution and the statute coextensive and consistent. Penalties and forfeitures, as the words are used in this exemption, are penalties and forfeitures imposed upon an offender as part of the punishment of his crime. United States v. Reisinger, 128 U.S. 398, 9 S.Ct. 99, 32 L.Ed. 480; Boyd v. United States, 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746; Lees v. United States, 150 U.S. 476, 14 S.Ct. 163, 37 L.Ed. 1150; United States v. Regan, 232 U.S. 37, 34 S.Ct. 213, 58 L.Ed. 494; La Bourgoyne (D.C.) 104 F. 823. The statute is a grant of amnesty. *233 The witness is to have the same protection as if he had received a pardon. Brown v. Walker, 161 U.S. 591, 599, 16 S.Ct. 644, 40 L.Ed. 819; Burdick v. United States, 236 U.S. 79, 35 S.Ct. 267, 59 L.Ed. 476. It is inconceivable that the intention was to give him even more. But a pardon, as we have seen though it blots out penalties and forfeitures, does not render the courts impotent to protect their honor by disbarment. Matter of an Attorney, supra, 86 N.Y. 563. The Legislature cannot have believed that in the interpretation of a grant of amnesty exemption from penalties and forfeitures would receive a broader meaning. Disbarment therefore is not within the range of the exemption. That was the ruling in Matter of Biggers, 24 Okla. 842, 104 P. 1083, 25 L.R.A. (N.S.) 622, in circumstances not to be distinguished from those before us. It is a ruling well sustained by precedent and reason.
"There are two other lines of argument which by different methods of approach lead to the same goal. One argument is purely verbal. It points to the concluding words of the statute:
"`No testimony so given or produced shall be received against him upon any criminal investigation, proceeding or trial.' Penal Law, § 584.
"The use of the word `criminal' helps to explain and characterize the kinds of penalties and forfeitures within the range of the exemption. But there is another argument more significant than any verbal one. The argument is that, unless the immunity is limited to criminal penalties and criminal forfeitures, the state has promised more than it can perform, and the whole statute becomes illusory...."
"...
"Consequences cannot alter statutes, but may help to fix their meaning. Statutes must be so construed, if possible, that absurdity and mischief may be avoided. The claim of immunity from disbarment cannot survive the application of that test. If the exemption protects lawyers, it must equally protect physicians whose licenses have long been subject to revocation for misconduct. Public Health Law, § 170; Consol.Laws, c. 45; 1 R.S. 452, § 3; Matter of Smith, 10 Wend. 449; Allinson v. Gen. Council of Medical Education, (1894) 1 Q.B. 750. Two great and honorable professions have in that view been denied the right to purify their membership and vindicate their honor. The charlatan and rogue may assume to heal the sick. The knave and criminal may pose as a minister of justice. Such things cannot have been intended, and will not be allowed.

"The order of disbarment should be affirmed." (Emphasis added)
In concluding this lengthy dissent, I am compelled to point out that one of the authorities cited in the majority opinion as support for the statement that Baron, supra, is erroneous and should be overruled, viz. 2 Am.Jur. Administrative Law, ¶ 268, concludes with the statement: "However, the privilege against self-incrimination offers no protection against administrative sanctions which are not criminal or penal in nature." The cases cited are likewise inapplicable because they relate to immunity from criminal prosecution because of forced testimony in an administrative proceeding under statutes providing for such immunity.
It is inconceivable to me, to use only one example, that a law enforcement officer under civil service could be brought before a grand jury or state's attorney, confess to participation in criminal activities and then effectively bar suspension or removal from office and thereafter wear the badge of authority and remain the symbol of the law  and yet, that is what this decision of the majority will permit. The majority opinion can only further deteriorate public respect *234 for the government and those who govern, which, everybody knows has now reached a historic low.
I dissent.
ROBERTS, Acting C.J., and ADKINS, J., concur.
NOTES
[1] Petitioner  in his original brief  says "The Headley decision indicated that immunity granted from criminal prosecution covered only investigations, proceedings or trials ... The Court indicated that administrative disciplinary proceedings were not a penalty or forfeiture, nor an investigation, proceeding or trial within the meaning of the immunity statute Chapter 935 F.S., F.S.A., and were, therefore, outside the purview of any immunity from criminal prosecution previously granted." He further states with reference to the above quotation "This is the law in the State of Florida at this time and Petitioner does not dispute this fact." (Emphasis added)
[2] Headley overruled the previous decision of this Court, Florida Board of Architecture v. Seymour, 62 So.2d 1, which held that the immunity statute then in force encompassed immunity from disciplinary proceedings by administrative bodies, in that case, the Florida Board of Architecture.
[3] In Fischwenger v. York, 154 Fla. 450, 18 So.2d 8, this Court said:

"... When conflicts occur between the right of the citizen to follow such profession and the right of the state to preserve the general health and welfare, the right of the citizen in the matter must yield to the power of the state to prescribe such reasonable restrictions and regulations as may be necessary to protect the people from ignorance, incapacity, deception or fraud... ."
[4] After the original argument this Court requested the parties to brief the question of whether Headley v. Baron was erroneous and should be overruled. The case was reargued on this side issue.