QUESTION: Would it be lawful for the Florida Division of Corrections to dismiss or otherwise discipline an employee for insubordination if he should refuse to answer questions or undergo a polygraph examination concerning his activities as a law enforcement officer?
SUMMARY: No existing statute or valid implementing rule purports to authorize an administrative body or official to dismiss a career service employee who refuses to cooperate in or answer questions or submit to a lie detector examination during the course of an administrative investigation or proceeding. A career service employee may not be dismissed for "just cause" or "insubordination" for refusing to obey an order issued by an administrative body or official which is beyond the power of such body or official to issue in the first instance. Career service employees who have obtained permanent status in the career service possess an interest in their public position of which they may not be deprived without due process of law. In the absence of statute or valid implementing rule specifically authorizing dismissal or separation from the career service of a career service employee, such employee may not be discharged or otherwise disciplined for failing to answer questions or allegations or refusing to submit to a lie detector examination during the course of an administrative hearing. To the extent that a statute or implementing rule should purport to require a career service employee to answer questions or submit to a lie detector examination without the benefit of the Fifth Amendment privilege against selfincrimination in a removal or other disciplinary proceeding, such statute or rule would, in all likelihood, be held invalid by the judiciary. Your question as stated is answered in the negative. In responding to your inquiry, I assume that the employee referred to in your question is a member of the state career service system who has successfully completed an initial probationary period and now has attained permanent status in the career service. As such, the answer to your question will be governed exclusively by Ch. 110, F.S., and the rules and regulations of the Division of Personnel of the Department of Administration promulgated thereunder. In taking this position, I have not overlooked s. 945.21(e) and (m), F.S. (s. 15, Ch. 57-213, Laws of Florida), which permits the division to adopt and promulgate rules concerning ". . . the conduct of custodial and other personnel" and ". . . [s]uch other regulations as in the opinion of the division may be necessary for the efficient operation and management of the correctional system." These regulations were intended to implement former s. 16, Ch. 57-213, and s. 945.23, F.S. 1969, which established a civil service system for personnel of the division. Former s. 945.23(3), permitted the division to provide, by regulation, for the removal, suspension, or demotion of employees for cause as specified in the regulations. However, s. 945.23(6), stated: In lieu of the above provisions of this section, the division may elect to place the director and all other employees of the division under the division of personnel and retirement of the department of administration as provided in Ch. 110. (Emphasis supplied.) The Legislature has elected to place the division's employees under Ch. 110, F.S., as indicated by s. 285 of Ch. 71-377, Laws of Florida, which expressly repealed s. 945.23, F.S., and noted that s. 945.23 had been superseded by Ch. 110, F.S., as amended by s. 31, Ch. 69-106, Laws of Florida. While your question refers to employees of the division as "law enforcement officer(s)," I am unaware of any statute which classifies or characterizes the division's employees as "law enforcement officers" (other than s.790.001(8)(d), F.S., which, for the purposes of Ch. 790, F.S., defines those correctional system employees designated by the Division of Corrections to be "law enforcement officers") or authorizes the exercise of any of the state's sovereign power or prescribes discretionary or independent authority to such employees of a governmental, as opposed to ministerial, nature. [See] 72 C.J.S. Prisons s. 11. Also see s. 1(1), Ch. 74-274, Laws of Florida, and s. 23.061(1), F.S., specifically defining "law enforcement officer" as any person employed full time by any municipality, this state, or any political subdivision thereof and whose primary responsibility is the prevention and detection of crime or the enforcement of the penal, traffic, or highway laws of this state. The State Career Service System, Ch. 110, F.S., was originally established by the Legislature in order to create a statewide personnel program based on merit and fitness. Chapter 67-437, Laws of Florida. The State Career Service System is applicable to all positions in state government except as specifically exempted therein. Attorney General Opinion 073-32. Accordingly, the provisions of Ch. 110 setting forth procedures for the lawful dismissal or disciplining of career service employees who have attained permanent status control the answer to your question and therefore must be analyzed and discussed in order to determine if sufficient statutory authority exists which would allow the action contemplated by your question. Section 110.061(1), F.S., states: "Any employee who has permanent status in the career service may only be terminated for cause by the agency or officer by whom he is employed." (Emphasis supplied.) Pursuant to s. 110.061(2)(a), F.S., the Department of Administration has been granted the authority to establish rules and procedures governing the ". . . suspension, reduction in pay, transfer, layoff, demotion and dismissal of employees in the career service for cause. . . ." (Emphasis supplied.) Also see ss. 110.022(1)(g) and 110.042(22) and (23), F.S. "Just cause" for dismissal is defined by Rule 2A-7.10(g)(2), F.A.C., to include, but not be limited to, the ground of insubordination. An examination of Ch. 110 and the Florida Administrative Code fails to reveal any statute or valid implementing rule promulgated within the statutory powers of the proper administrative officer which either defines "insubordination" so as to include within the definition of that term the refusal to answer questions directly related or connected with a career service employee's official conduct or duties or the refusal to undergo a lie detector test on such matters. Moreover, there is no statute or valid implementing rule which expressly requires a career service employee to answer such questions or expressly requires such employees to cooperate with their administrative supervisors in administrative intradivision, intradepartment, or "internal" investigations regarding their official conduct and performance of official duties under penalty of disciplinary action or dismissal. Nor does any statute or valid implementing rule exist which requires members of the career service system to undergo or submit to a lie detector test during the course of an internal administrative investigation upon pain of dismissal or other disciplinary action. There is no statute or valid implementing rule which authorizes any administrative official or body to compel career service employees under such official or body's supervision and administrative control to cooperate in any intradivision or internal investigation by answering questions as to their official conduct or performance of their official duties and authorizes such administrative official to dismiss such employees upon their refusal to so cooperate. Nor does any statute or valid implementing rule exist which authorizes an administrative official or body to compel career service employees to submit to a lie detector test during the course of such an intradivision or internal investigation. Compare s. 110.022(3), F.S., which empowers the Division of Personnel of the Department of Administration to adopt rules providing for the fingerprinting of career service employees. Administrative agencies and officials possess no common law powers. They are creatures of the Legislature and what powers they have are limited to the statutes that create them. St. Regis Paper Co. v. State of Florida, Florida Air and Water Pollution Control Com'n, 237 So.2d 797 (1 D.C.A. Fla., 1970); City of Cape Coral v. G.A.C. Utilities, Inc.,281 So.2d 493 (Fla. 1973); State ex rel. Greenberg v. Fla. State Bd. of Dent., 297 So.2d 628 (1 D.C.A. Fla., 1974), cert. dismissed,300 So.2d 900 (Fla. 1974). For a valid order to exist, there must be some basis in a statute for the exercise of jurisdiction and power involved in the making of such an order by an administrative official or body. State ex rel. Burr v. Jacksonville Terminal Co.,71 So. 474 (Fla. 1916). It is a fundamental tenet of administrative law that if there is reasonable doubt as to the lawful existence of a particular power which is being exercised, the further exercise of the power should be arrested. Edgerton v. International Co., 89 So.2d 488 (Fla. 1956); State v. Atlantic Coast Line Railroad Co., 47 So. 969 (Fla. 1908); City of Cape Coral v. G.A.C. Utilities, Inc., supra. Since in this instance there is no existent statutory basis for requiring career service employees to cooperate in any administrative internal investigation by answering questions or submitting to a lie detector test concerning their official conduct, it follows that a career service employee who refuses to answer questions in that regard in an internal administrative investigation or submit to a lie detector test during the course of such an investigation may not be lawfully dismissed as a result thereof. Insubordination as contemplated by Ch. 110, F.S., and Rule 22A-7.10(g)(2), F.A.C., does not include the refusal to obey an order which is beyond the power or authority of an administrative board or official to issue in the first instance. Stape v. Civil Service Comm., 172 A.2d 161
(Pa. 1961); City of Miami v. Jervis, 139 So.2d 513 (3 D.C.A. Fla., 1962). In addition, there is another fundamental issue which is raised whenever a public employer attempts to coerce, upon pain of dismissal or disciplinary action, a public employee to answer questions or submit to a lie detector examination as part of an internal administrative investigation. Unlike some of the other jurisdictions, in Florida the Fifth amendment privilege against selfincrimination is assertable in administrative as well as criminal proceedings. Kozerowitz v. Fla. Real Estate Com'n,289 So.2d 391 (Fla. 1974); Lurie v. Florida State Board of Dentistry,288 So.2d 223 (Fla. 1974); Vining v. Florida Real Estate Com'n,281 So.2d 487 (Fla. 1973). When one's livelihood, professional standing, or reputation is threatened, the privilege clearly may be lawfully claimed in this state in an administrative proceeding if the answer to a particular question or line of inquiry is or may be inculpatory. Lurie, supra at 227, quoting, in re Gault,387 U.S. 1, 49 (1967). Career service employees who have attained permanent status in the career service system have acquired a property interest in their public positions and emoluments thereof such as job security and seniority which they may not be deprived of without due process of law. Rosenfelder v. Huttoe, 24 So.2d 108
(Fla. 1945) (en banc); Headley v. Baron, 228 So.2d 391 (Fla. 1969), reversed in part, Vining v. Florida Real Estate Com'n, supra. As noted by Justice Terrell in Rosenfelder, supra, at 111: Under our system of jurisprudence, depriving one of his substance whether it be lands or chattels or public position is a serious matter and should not be permitted except under strict requirements of the law when due process is observed. (Emphasis supplied.) Statements obtained from a public employee under threat of dismissal cannot be used as evidence in a subsequent criminal prosecution. Garrity v. New Jersey, 385 U.S. 493 (1967). In Spevack v. Klein, 385 U.S. 511 (1967), the companion case of Garrity, the court held that an attorney could not be disbarred because he refused to testify at a judicial inquiry when his refusal was based on the ground that his testimony would tend to incriminate him. (In State ex rel. Vining, supra, the Florida Supreme Court, at p. 491, applied the rationale of Spevack to other types of administrative proceedings.) Subsequently, in Gardner v. Broderick, 392 U.S. 273 (1968), a police officer's constitutional rights were said to be violated when he was discharged because of his refusal to sign a waiver of immunity and testify before a grand jury. In Uniformed Sanitation Men Ass'n v. Comm. of Sanitation, 392 U.S. 280, the Supreme Court pointed out that public employees subject themselves to dismissal if they refuse to account for their performance of public trust, after proper proceedings, which do not involve an attempt to coerce them to relinquish their constitutional rights. Justice Fortas went on to note in Gardner, at 278, that an employee may be required to "answer questions specifically, directly and narrowly relating to the performance of his official duties, without being required to waive his immunity to the use of his answers or the fruits thereof in a criminal prosecution of himself." However, as noted by the emphasized portion above, the court was aware of a New York statute which purported to grant immunity from any subsequent criminal prosecutions arising because of the policeman's inculpatory answers obtained by the employer in an administrative hearing. In Florida, however, immunity attaches only in limited circumstances and it does not attach to testimony compelled during the course of an investigatory administrative hearing. Cf. AGO 073-150. There is no state statute which assures a public employee in such circumstances that anything he may say or submit to upon threat of dismissal or the fruits thereof will not be used against him in any subsequent criminal prosecution or adjudicatory administrative or disciplinary proceeding. An administrative officer or body is totally without statutory authority to grant any form of immunity from subsequent criminal prosecution to a public employee who "voluntarily" testifies as a result of such a purported grant during the course of an administrative hearing or investigation or to assure a public employee that anything he says or the fruits thereof will not be used against him in a subsequent adjudicatory administrative proceeding at a later date. Nothing in the statutory law prevents an administrative officer from subsequently dismissing an employee based upon incriminating statements of, or evidence furnished by, the employee in circumstances where the employee erroneously believed and had been assured by the administrative officer or body that such incriminating evidence or answers were "immune answers" immunizing such employee from disciplinary action or criminal prosecution. To the contrary, an administrative official has no discretion or power whatsoever in these matters and instead has a duty to bring facts or statements which evidence valid grounds for dismissal or criminal prosecution to the attention of the proper authorities. In Luman v. Tanzler, 411 F.2d 164 (5th Cir. 1969), the court dealt with a situation involving a policeman who prevailed in the United States District Court in having an injunction issued against the City of Jacksonville which restrained the city from holding an administrative hearing at which he would be faced with the choice of testifying or being fired under a valid and existing police department rule. While dissolving the injunction issued against the city as being improvidently granted, the Fifth Circuit Court of Appeals made the following observations regarding that Circuit's interpretation of the impact of Garrity, Gardner, and Uniformed Sanitation Men, supra: The question for this court then is how stands Luman in light of these authorities? There is no contention that defendants could grant him immunity from state prosecution. Cf. the Florida statute on immunity as it relates to courts, F.S.A. s. 932.29. Thus we do not have a precise Gardner case. We do, however, have a Uniformed Sanitation Men case, and under its rationale, Luman is forearmed with the fact that he cannot be discharged for refusing to testify. He no longer faces the choice of selfincrimination or job forfeiture under Rule 5.39(x). [Luman, at 167.] As interpreted by the Fifth Circuit Court of Appeals, the rule or regulation governing the Jacksonville Police Department which required a policeman to waive immunity and testify on penalty of dismissal or forfeiture of his job could not be applied against a sworn policeman. At the administrative hearing he was to be given a "free choice to admit, to deny or to refuse to answer." Luman, at 167. On the other hand, the city was allowed to proceed with the administrative hearing or proceeding within the confines of the charges against the police officer which related to the performance of his official duties. Also see Confederation of Police v. Conlisk, 489 F.2d 891 (7th Cir. 1973). Various state courts which have considered these legal principles and their effect on employees, almost always sworn police officers, who have refused to answer questions and asserted Fifth Amendment privilege or refused to submit to lie detector examinations have reached contrary conclusions. Compare DeVito v. Civil Service Comm. of City of Philadelphia, 172 A.2d 161 ( Pa. 1961); Molino v. Board of Public Safety of City of Torrington,225 A.2d 805 (Conn. 1966); Engel v. Township of Woodbridge,306 A.2d 485 (N.J. 1973); Lone Star Company, 149 N.L.R.B., No. 67, 57 LRRM 1365 (1965), with, Frazee v. Civil Service Board, 338 P.2d 943 (1 Dist., Div. 2, 1959); Coursey v. Board of Fire Police Consumers,234 N.E.2d 339 (1 Dist., 3rd Div., 1967); Roux v. New Orleans Police Dept., 227 So.2d 148 (La. 1969); Dolan v. Kelly,348 N.Y.S.2d 478 (N.Y.App. 1973); Seattle Police Officers Guild v. City of Seattle, 494 P.2d 485 (Wash. 1972). While many of these decisions have been based, to a large measure, on the special position of public trust occupied by police in our society, see, e.g., Allen v. City of Greensboro, 322 F. Supp. 873 (M.D.N.C. 1971), existing judicial precedents in this jurisdiction demonstrate an unwillingness on the part of Florida courts to allow a lower constitutional standard to be applied to or imposed upon police officers accused of misconduct in disciplinary cases. See, e.g., Fla. State Board of Architecture v. Seymour, 62 So.2d 1
(Fla. 1952); Lurie v. Florida State Board of Dentistry,288 So.2d 223 (Fla. 1973), reversing in part Headly v. Baron, 228 So.2d 281
(Fla. 1969); State ex rel. Vining v. Fla. Real Estate Com'n,281 So.2d 487 (Fla. 1973). Also see ss. 2 and 5 of Ch. 74-274, Laws of Florida (The Policemen's Bill of Rights Law), requiring, inter alia, that all law enforcement personnel under interrogation in an internal investigation which could lead to disciplinary action or dismissal be interrogated pursuant to the procedures and under the conditions therein prescribed; that the police officer not be threatened with dismissal or disciplinary action, nor be promised anything as an inducement to answering any questions; and if the officer is likely to be placed under arrest as a result of such interrogation, that he or she be completely informed of all of his or her rights before commencement of the interrogation; and prohibiting the discharge or discipline of, or discrimination in regard to employment against, any law enforcement officer or threatening any such treatment by reason of the exercise of any right granted by that act. In City of Miami v. Jervis,139 So.2d 513 (3 D.C.A. Fla., 1962), involving an administrative proceeding in which several police officers were charged with "conduct unbecoming an employee" for their refusal to sign a waiver of immunity under existent civil service rules and regulations in an investigation by the grand jury of the same incident out of which the administrative charges arose — but who had offered voluntarily to testify after the administrative hearing — and for refusing to submit to a lie detector test, the trial court (whose findings of fact and conclusions of law were approved and adopted by the appellate court), in ordering the officers reinstated, went on to note that the burden of proof in disciplinary cases rests upon the governmental employer, Hammond v. Curry, 14 So.2d 390
(Fla. 1943), and that a presumption of innocence exists in removal proceedings. Hawkins v. McCall, 29 So.2d 739 (Fla. 1947). The appellate court, at p. 517, also itself announced that "no presumption is to be drawn adverse to a person or party because of his failure to submit to a lie detector test." Jervis, id. Similarly, in Swope v. Florida Indus. Com'n Unemp. Comp. Bd. of Rev., 159 So.2d 653 (3 D.C.A. Fla., 1963), the court held that a private employee's refusal to submit to a lie detector examination did not amount to "misconduct" for which unemployment compensation benefits could be denied. In both Jervis and Swope, the court questioned the accuracy of lie detector examinations and the effect a mistake could have on an innocent employee who was not a proper subject for such tests. Also noteworthy is the Florida Supreme Court's consistent refusal to allow the results of lie detector examinations to be admissible in evidence. Sullivan v. State, 303 So.2d 632 (Fla. 1974); Kaminski v. State, 63 So.2d 339
(Fla. 1953). In sum, the Florida decisions, as well as the sole federal decision arising in this jurisdiction, which control the answer to your inquiry would indicate that a career service employee who has attained permanent status has attained an interest in a public position of which he may not be deprived without due process of law; in the absence of statute or valid implementing rule specifically authorizing dismissal or separation from the career service of a career service employee, such employee may not be discharged or otherwise disciplined for failing to answer questions or allegations made against him or refusing to submit to a lie detector examination during the course of an administrative internal investigation; to the extent that a statute or implementing rule should purport to require a career service employee to answer questions or submit to a lie detector examination without the benefit of the Fifth Amendment privilege against self-incrimination in a removal or other disciplinary proceeding, such statute or rule would likely be held invalid by the judiciary. However, since no existent statute or valid implementing rule purports to authorize an administrative body or official to dismiss a career service employee who refuses to cooperate in, or to answer questions or submit to a lie detector examination during the course of an administrative investigation or proceeding, it follows that an employee may not be dismissed for just cause for refusing to obey any such order issued by such body or official without statutory authority so to do. Simply stated, is it insubordination for a career service employee to decline to do that which an administrative officer or body has no lawful authority to require him to do in the first instance? The answer, just as simply, must be in the negative. Also see generally, Ch. 74-289, Laws of Florida, which authorizes the Career Service Commission to include in orders of reinstatement attorney's fees, witness fees, and other out-of-pocket expenses incurred by an employee in prosecuting an appeal to the commission in which the commission sustains the employee, such order being conclusive on the affected agency or officers concerned and s. 447.017, F.S., of the new Collective Bargaining Act. [N.L.R.B. v. Weingarten, 43 L.W. 4275, filed Feb. 19, 1975.]