## HEWITT CONTRACTING CO., INC. v DEPARTMENT OF TRANSPORTATION, STATE OF FLORIDA

Case No. 85-4167

State of Florida, Division of Administrative Hearings

January 28, 1986

### APPEARANCES OF COUNSEL

**Maxwell G. Battle, Jr.** for petitioner.

**Veronica E. Donnelly,** Department of Transportation, for respondent.

### OPINION

K. N. AYERS, Hearing Officer.

### *FINAL ORDER*

Pursuant to notice, the Division of Administrative Hearings, by its duly designated Hearing Officer, K. N. Ayers, held a public hearing in the above-styled case on January 17, 1986, at Tampa, Florida.

■■■■■■■■■■■

By Petition dated November 27, 1985, Hewitt Contracting Co., Inc., Petitioner, by and through its attorney, seeks reinstatement of its Certificate of Qualification to bid on and be awarded contracts let by the Department of Transportation (DOT), Respondent. As grounds therefor it is alleged that it will be in the public interest to reinstate Petitioner's Certificate of Qualification.

At the commencing of the hearing the parties submitted a STIPU-LATION which comprises Findings of Fact 1-14. Additions to those stipulated facts gleaned from evidence presented at the hearing are underlined. Thereafter, Petitioner called three witnesses, Respondent called one witness, and nine exhibits were admitted into evidence.

Proposed findings have been submitted by the Petitioner. Treatment according to those proposed findings are contained in Appendix A, which is attached hereto and made a part hereof.

### FINDINGS OF FACT

1. In 1984 and for many years prior Petitioner held a Certificate of Qualification to bid on and be awarded contracts let by the Department.

2. On April 10,1984, Petitioner entered into a voluntary plea, and was convicted of a one-count criminal violation of Title 15, USC, Section 1, which is commonly known as "The Sherman Antitrust Act." The charge involved a public contract with the Florida Department of Transportation in which Petitioner received a complimentary bid from another contractor who was bidding on the same project which was awarded to Petitioner. This practice is commonly known as "bid rigging." The conviction took place in the U. S. Northern District of Florida. *Petitioner would have submitted the same bid on this project without the benefit of the complimentary bid.*

3. 33 C.F.R., Part 16, provides for a maximum debarment on first conviction of 36 months *by a federal agency.*

4. Petitioner was debarred *by the Federal Highway Administration* for only six (6) months based upon a review and determination of culpability of the Petitioner in the crime of which Petitioner was convicted.

5. Immediately subsequent to December 17, 1984, Petitioner was declared acceptable for employment on highway projects which required approval or concurrence of the Federal Highway Administration.

6. On June 18, 1984, Respondent revoked the Petitioner's Certificate

of Qualification for a period of 36 months pursuant to Florida Statutes 337.165(2)(a). The only reason given for the revocation was the aforementioned conviction.

7. With the exception of Petitioner, who has never had a decision rendered on a Petition for Reinstatement by Respondent, every contractor who has been debarred and/or had its Certificate of Qualification revoked by Respondent pursuant to Section 337.165, *Florida Statutes*, who has petitioned for reinstatement, has been reinstated by Respondent.

8. Exhibit "A" hereto is a list of contractors who were debarred by Respondent and were reinstated. It was in the public interest to reinstate each of these contractors.

9. It is in the public interest and the interest of the Respondent to build roads, build them at a good price, *and* have a competitive bidding system with integrity.

10. Petitioner has promptly and voluntarily continued to pay its fine *of $65,000* to the Federal Court.

11. No payment of damages has ever been requested by the State as a result of the Petitioner's violation of state or federal antitrust laws.

12. The Petitioner notified the Respondent within thirty (30) days after his conviction of the contract crime.

13. Petitioner has the manpower, equipment, financial resources, and contracting experience to meet the Respondent's requirements in those areas for the purpose of a Certificate of Qualification.

14. Howard H. Hewitt became affiliated with Square D Contracting Company in 1967 when he acquired a minority interest in the company. He subsequently increased that interest to 50 percent. In 1980 he acquired the remainder of the stock and changed the name of the company to Hewitt Contracting Co., Inc.

15. In 1980 the Florida Attorney General's Office commenced an investigation of bid rigging by road contractors. In February 1983 the Attorney General's Office subpoenaed Hewitt to appear under their Civil Investigative Demand procedures and give evidence about his knowledge of bid rigging in Florida. He appeared and, on the advice of counsel, refused to give testimony claiming protection under the Fifth Amendment.

16. By Court Order, Exhibit 8, dated June 24, 1983, Hewitt was directed to give testimony to the Florida Attorney General under grant of immunity from criminal prosecution and from any civil penalty as

provided in § 542.21(1), *Florida Statutes* (1981), as to those transactions about which he testifies. In compliance with that order he submitted documents and testified before assistant attorney generals three times. A grant of immunity by the Florida Attorney General's Office would not shield Hewitt from federal prosecution.

17. Following the filing of charges by the Federal District Attorney, Hewitt provided testimony to federal officials several times regarding his knowledge of contract crimes, dropped his membership in the Florida Road Builders Association, started using a different hotel during his appearances in Tallahassee, and limited his contacts with fellow contractors to those necessary to conduct business.

18. In a subsequent damage trial brought by the Attorney General's Office against Ezelle Construction Company, Hewitt advised both parties that he would testify for neither and, upon advice of counsel, would claim the Fifth Amendment if subpoenaed. Neither side subpoenaed Hewitt. The jury found Ezelle not liable for damages as claimed by the Attorney General.

19. The only witness called by Respondent, Assistant Attorney General Bayard W. Heath, testified that the critical part of the bid rigging investigation in which he was involved occurred in 1983 at which time Hewitt asserted the Fifth Amendment privilege and caused a change in the investigation plans of the antitrust division. When Hewitt's counsel in January 1985 advised Heath that Hewitt would take the Fifth Amendment if subpoenaed to testify in the civil damages suit brought against Frank Ezelle, et al., he released Hewitt from the subpoena and did not attempt to enforce the subpoena.

20. Petitioner presented one rebuttal witness, the attorney who represented Hewitt during the civil investigative demand procedures by the antitrust division of the Attorney General's Office. He testified that he was never advised by Heath or any other attorney from the Florida Antitrust Division that there was a critical period during which Hewitt's testimony was wanted, or that they were in any manner dissatisfied with the cooperation given by Hewitt after the grant of immunity. This witness also testified that an offer by Hewitt to settle any charges against him by an offer to pay damages to the state was flatly rejected by the antitrust division and that he was told that if Hewitt cooperated with the antitrust division they would decide after the fact what action they would take against Petitioner.

21. Prior to the revocation of its Certificate of Qualification in 1984, Square D and subsequently Hewitt Contracting Co., Inc., enjoyed a reputation as a competitive bidder who completed projects in a timely

268

and professional manner. Two witnesses employed by Respondent in the area of Petitioner's headquarters opined that reinstatement of Petitioner's Certificate of Qualification would enhance the road building and construction work in Florida by the addition of Petitioner as an active participant in the bidding process.

22. Subsequent to the conviction in the Federal Court Petitioner prepared a Code of Conduct for Employees of Hewitt Contracting Company (Exhibit 4) and distributed this to all personnel involved in preparing bids for Petitioner. Additionally, Howard H. Hewitt personally approves all bids submitted by Petitioner and supervises those preparing these bids. Howard H. Hewitt expressed remorse about the company's prior activity leading to the conviction and is committed to ensuring that it never occurs again.

## CONCLUSIONS OF LAW

The Division of Administrative Hearings has jurisdiction over the parties to, and the subject matter of, these proceedings.

These proceedings are governed by Section 337.165(2)(d), *Florida Statutes* (1985), which provides in pertinent part:

A contractor or affiliate whose certificate has been denied or revoked may, at any time after denial or revocation, petition for and be granted a hearing to determine his eligibility for reapplication or reinstatement upon such terms and conditions that may be prescribed upon finding that the reapplication or reinstatement is in the public interest. . . . In determining whether the reapplication or recertification would be in the public interest, the department or the division hearing officer shall give consideration to any relevant or mitigating circumstances, which may include, but are not limited to, the following:

1. The degree of culpability;

2. Prompt and voluntary payment of damages to the state as a result of the contractor's violation of state and federal antitrust laws;

3. Cooperation with any state or federal prosecution or investigation of a contract crime;

4. Disassociation with those involved in a contract crime;

5. Reinstatement in other state or federal jurisdictions; and

6. The needs of the department in completing its programs in a timely cost-effective manner.

Subsection (2)(a) of this statute is the authority upon which Petitioner's Certificate of Qualification was revoked and provides:

No contractor or its affiliate shall be qualified to bid on work let by the department when it is determined that he has, subsequent to January 1, 1978, been convicted of a contract crime within the jurisdiction of any state or federal court.

This section does not establish a time period during which the certificate shall be revoked, and subsection (2)(d) above-quoted establishes the terms for reinstatement.

The fact that the Code of Federal Regulation provides for a maximum debarment for three years on first conviction and the Federal Highway Administration opted for only a six-month debarment of Petitioner is indication that the offense committed by Petitioner did not have a high degree of culpability.

The only evidence submitted regarding Petitioner's prompt and voluntary payment of damages is the stipulation that Petitioner is prompt and current in the payment of the fine assessed by the Federal Court. No demand has ever been made by the state for damages resulting from the bid rigging charge to which petitioner entered a guilty plea.

Petitioner has cooperated with state and federal officials in their investigation of contract crime. During these investigations Petitioner was represented by a competent lawyer, well versed in criminal law, who advised Petitioner to take the Fifth Amendment when subpoenaed by the state antitrust division. The testimony of this attorney was unrebutted that he was told by the assistant attorney general in the antitrust division that Petitioner should come in and tell them all he knew about contract crime in Florida and his involvement, if any, therein; and *then* they would decide whether to bring criminal or civil charges against Petitioner.

The Fifth Amendment to the United States Constitution is a valuable shield to protect citizens from compulsory self-incrimination. Not only is it no offense to "take the Fifth," it is a constitutionally guaranteed right. It is not totally clear whether the antitrust division's opposition to this recertification stems from Petitioner's taking the Fifth Amendment when initially subpoenaed to testify or to testimony he gave after receiving a grant of immunity. If the former, denial of recertification would be a gross miscarriage of justice. Constitutional rights are not to be taken lightly. Certainly one may not be punished for exercising a constitutional right. Denial of recertification because one exercised a constitutional right would constitute punishment and such is repugnant to the letter and spirit of the Constitution.

If, on the other hand, the opposition stems from testimony given by

Petitioner after he was granted transactional immunity and compelled to testify, other similar constitutional problems arise.

Section 542.28, *Florida Statutes* (1983), establishes procedures for the antitrust division of the Attorney General's Office to obtain evidence in civil antitrust investigations. Subsection (11) thereof provides:

The Attorney General or a state attorney may request that any natural person who refuses to comply with any provisions of this section on the grounds that the testimony or documents may incriminate him be ordered by the circuit court to provide the testimony or the documents. Except in prosecution for perjury, a natural person who complies with a court order to provide testimony or documents after asserting a privilege against self-incrimination to which he is entitled by law may not be subject to a criminal proceeding or to the civil penalty of § 542.21(2) with respect to the transaction to which he is required to testify or to produce documents. Any natural person who fails to comply with such a court order to testify or produce documents may be adjudged in contempt and imprisoned until the time he purges himself of the contempt.

License revocation proceedings, though not criminal, are penal in nature. *State ex rel. Vining v. FREC*, 281 So.1d 487 (Fla. 1973), and a respondent in such proceedings is entitled to protection under the Fifth Amendment.

Revocation of a Certificate of Qualification to bid on DOT contracts is also penal in nature. Evidence that would be excluded upon objection in a proceeding to revoke a certificate should likewise be excludable in a proceeding to regain such certificate. To hold otherwise is to deny the applicant a constitutional right. Denying Petitioner a constitutional right in these proceedings would also deny him due process.

Transactional immunity as provided Petitioner in this case is broader than use immunity and precludes consideration in these proceedings of testimony given by Petitioner after being granted transactional immunity. As stated by the United States Supreme Court in *Kastigar v. United States*, 406 U.S. 441, 453, 92 S. Ct. 1653, 1661, 32 L.Ed. 2d 212 (1972):

While a grant of immunity must afford protection commensurate with that afforded by the privilege, it need not be broader. Transactional immunity, which affords full immunity from prosecution for the offense to which the compelled testimony relates, affords the witness considerably braoder protection than does the Fifth Amendment privilege.

271

This clearly indicates such immunity should carry over to these proceedings. Not only does this language of the U.S. Supreme Court so indicate, but also fair play compels the same results. As stated in *Lurie v. Florida Board of Dentistry*, 288 So.2d 223 (Fla. 1973):

> The State through its authorized officials in granting immunity to a witness acts totally for the state, including its licensing agencies. A professional state licensing board must respect the immunity granted similarly as must the prosecuting attorney. To be efficacious in securing testimony of a citizen the immunity extended must be coextensive with all possible governmental penalties and forfeitures, criminal or civil.

Petitioner has disassociated himself from those involved in contract crime and, by resigning from the state road contractors association and limiting his association with fellow contractors to essential business engagements, he has done all that can be expected in disassociating himself and company from others with whom contract crime could be committed.

Respondent was reinstated by the Federal Highway Administration and authorized to bid on all contracts let by the Federal Highway Administration after he had been debarred for six months. He has now been debarred by Respondent twenty (20) months based upon the identical facts that led to the Federal Highway Administration's six-month debarment.

The evidence is clear that Respondent was a responsible contractor for many years prior to his conviction of contract crime in 1984 on a contract let in 1978. Petitioner's work was done in a timely and professional manner and the bids submitted by Petitioner were competitive. Petitioner's recertification as a qualified contractor would result in greater competition in the bidding on DOT contracts and redound to the benefit of the public.

From the foregoing it is concluded that reinstatement of Hewitt Contracting Co., Inc., by reissuing a Certificate of Qualification would be in the public interest. It is

ORDERED that Hewitt Contracting Co., Inc., be reinstated as a contractor in good standing and reissued a Certificate of Qualification to bid on DOT projects.

DONE AND ORDERED this 28th day of January, 1986, at Tallahassee, Florida.